## NORMAN *v.* GOODE, executor, *et al.*

A party is bound, at his peril, to submit on the trial all competent evidence in his favor he has at hand. If he had knowledge of the fact and the same could have been proved at the trial by evidence other than that newly discovered, a new trial will not be granted, unless the movant can satisfactorily explain why he did not attempt to use the evidence then at hand.

A stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly discovered evidence than to an ordinary motion on that ground.

Argued October 28,— Decided December 12, 1904.

Extraordinary motion for new trial.    Before Judge Russell. Gwinnett superior court.    June 11, 1904.

*E. Winn Born,* for plaintiff in error.
*Green, Tilson & McKinney,* contra.

FISH, P. J.    Amanda A. Sanders, formerly Clark, married Charles B. Norman, in Gwinnett county, this State, in 1883, and

died there, intestate, in 1897, without a lineal descendant, and owning a certain house and lot in the town of Norcross. After her death her sisters, M. A. Goode, Ora O. Clark, and her niece, Harriet E. C. Norton, claiming to be her heirs at law, brought an action against Norman to recover the house and lot. Plaintiffs contended that Norman married Anna Hancock, in Harris county, this State, in July 1866, from whom he had never been divorced, that she was living at the time of his marriage to Mrs. Sanders, and, therefore, his marriage to Mrs. Sanders was void and he was not her heir at law. Norman's contention was, that he married Henrietta Prescott in Jacksonville, Florida, in February, 1865, was never divorced from her, that she was living when he married Anna Hancock, but died in 1869, before his marriage to Mrs. Sanders, and therefore his marriage with Anna Hancock was void, his marriage to Mrs. Sanders was valid, and he was her sole heir at law. On the trial, the Hancock marriage was proved by a certified copy of the license and certificate from the ordinary's office of Harris county. Norman submitted evidence to the effect that he and Henrietta Prescott lived together as husband and wife in Jacksonville, Florida, in the early part of 1865, and that the repute in her family and in the community where they lived was that they were husband and wife. Norman testified, in general terms, that he was married to her in Jacksonville, Florida, in February, 1865, but did not give any of the circumstances of the marriage, whether there was a license, or ceremony, and, if so, who officiated, or whether there were any witnesses present. There was a verdict for the plaintiffs. Norman moved for a new trial, which was refused, and he excepted. This court (113 *Ga.* 121) affirmed the judgment of the trial court refusing a new trial, and held, that: "'The presumption of law, founded on cohabitation and repute, that a marriage had taken place, will not prevail over proof of a subsequent marriage in fact by one of the parties with a third person.'" And, that as the bare statement of Norman in his testimony, that he was married to Henrietta Prescott, was merely a conclusion of his from the facts surrounding his relations with her, which were not detailed by him, but which were referred to in the testimony of other witnesses who testified in his behalf, and as the testimony of these witnesses merely raised a presumption, from cohabitation and repute, of a marriage between Norman

and Henrietta Prescott, when such presumptive marriage came in competition with his marriage in fact to Anna Hancock, shown to have taken place in strict conformity to law, the marriage in fact prevailed; that Anna Hancock was the lawful wife of Norman; that he was incapacitated to marry Mrs. Sanders, and therefore was not her heir at law; and that plaintiffs were entitled to recover the property in dispute.    Subsequently Norman made a second, or extraordinary, motion for a new trial, on the ground of newly discovered evidence.    The alleged newly discovered evidence, which was set out in exhibits attached to the motion, consisted of a certified copy from the War Department at Washington, D. C., of a marriage license, dated at Jacksonville, Florida, February 23, 1865, and issued by Capt. J. W. Johnson, 3rd U. S. C. T., and Provost Marshal of the District of Florida, reciting that martial law existed throughout such district, and authorizing any minister of the gospel to join N. B. Norman and Henrietta Prescott in marriage and to make return to the office of such marshal; also a certified photographic copy, from the War Department, of a certificate, entered on the license, by John S. Swain, pastor of the M. E. Church, at Jacksonville, Florida, that he had solemnized the rite of matrimony between N. B. Norman and Henrietta Prescott on February 23, 1865.

There were also exhibits of certified copies, from the War Department, of orders showing that martial law was in operation in Florida in February, 1865, and that Capt. Johnson was then Provost Marshal of the District of Florida; also a certified copy, from the War Department, of an order by the Assistant Adjutant General, dated April 7, 1865, that "all military records, such as files of public letters, letter books, other books and other record books, muster rolls &c.,  . . required for future reference in the settlement of claims against the government and for other official purposes," be forwarded by express to the Adjutant General's office by the officers of discontinued commands, if such records were not necessary for use at the department headquarters.    There were also exhibits of ordination of J. S. Swain as a deacon and elder in the M. E. Church, dated respectively 1836 and 1838, authorizing him to perform the ceremony of marriage, etc.    Other exhibits were:    The affidavit of J. W. Swain, who deposed that he was the son of J. S. Swain; that he found the

certificates of ordination above referred to among his father's papers; that his father was pastor of the M. E. Church in Jacksonville, Florida, in February, 1865, but was not an army chaplain, and that he died in 1875; that deponent knew his father's handwriting, and that from the certified photographic copy of the marriage certificate he knew that his father wrote and signed the original.    A certified copy of Ordinance No. 3 of the Constitutional Convention of Florida, adopted November 4, 1865, declaring all marriages valid which had been solemnized in that State since January 10, 1865, by an ordained minister of the gospel, etc.    A certified copy of article 15, section 6, of the constitution of Florida, adopted February, 1868, validating "all proceedings, decisions, or actions accomplished by civil or military officers in Florida acting under authority of the United States subsequent to January 10, 1865, and prior to the final restoration of the State to the government of the United States," viz., July 31, 1868.    Certified copies of acts of the legislature of Florida, passed in 1828 and 1829, directing ministers solemnizing marriages to make certificate thereof on the license and transmit same to the clerk of the county court of the county wherein the marriage took place, to be recorded and filed as evidence of the marriage.    The affidavits of Norman and all the counsel who represented him on the trial were attached to the motion, from which it appeared that none of them knew that the marriage license and certificate were on file in the War Department until after the trial, and after the overruling of the original motion for a new trial.    There were affidavits to the effect, that, before the trial, the records of the county court of Duval county, in which Jacksonville, Florida, is situated, as well as the records of all the courts in that county, had been diligently searched, and no evidence of the marriage of Norman to Henrietta Prescott could be found; that inquiries for information as to such marriage had, before the trial, been made of various named officials and old residents of Duval county, but without avail, except as to the evidence of the repute which was submitted on the trial; that Norman's real name was Charles Napoleon Bonaparte Norman; that the clue which led to the discovery of the fact that the marriage license and certificate were on file in the War Department was the testimony of one of Norman's witnesses, who testified

upon the trial, on direct examination, that Norman was married to Henrietta Prescott by a "chaplain of the soldiers," but who on cross-examination testified that he was not present at the marriage, but had heard that Norman was married by a chaplain. Attached to the motion was a brief of the evidence submitted on the trial. The court refused to grant a new trial on this extraordinary motion, and movant excepted.

A new trial may be granted when material evidence, not merely cumulative in its character, but relating to new and material facts, shall be discovered by the applicant after the rendition of a verdict against him; but it must appear that neither the applicant nor his counsel knew of the existence of such evidence before the trial, and that the same could not have been discovered by the exercise of ordinary diligence. Civil Code, §§ 5480, 5481. As has been announced in many adjudicated cases, courts view with disfavor and caution, if not with suspicion, motions for new trials on the ground of newly discovered evidence. It is a most salutary requirement that each party is bound, at his peril, to submit on the trial all competent evidence he has at hand. Otherwise trials would be speculative and the end of litigation remote. The general rule is, that if a party had knowledge of a fact at the trial and it could have been proved then by evidence other than the newly discovered, a new trial will not be granted, unless the applicant can satisfactorily explain why he did not attempt to use the evidence at hand. 14 Enc. Pl. & Pr. 802. The principle of this rule has been recognized and followed in many cases. Davis v. Zumwalt, 1 White & W. Civ. Cas. Ct. App. 596; Herman v. Mason, 37 Wis. 273; Huison v. Catoe, 10 So. Car. (Rich.) 311; Bledsoe v. Little, 4 How. (Miss.) 13; Conrad v. Conrad, 9 Phila. 510; Quigley v. Birdseye, 11 Mont. 439; Chapman v. Moore, 107 Ind. 223; Davis Sewing Mach. Co. v. Dunbar, 32 W. Va. 335; Hanley v. Life Asso., 69 Mo. 380; Gullett v. Housh, 7 Blackf. (Ind.) 52; Nixon v. Christie, 84 Ga. 496. In Jinks's case, 117 Ga. 714, it was said: "The discovery of evidence which is simply cumulative of that of the existence of which a party knew when the case was tried and which he then might have introduced can not be ground for a new trial." Applying the rule announced to the facts disclosed by the record in the present case, did the court err in overruling

the extraordinary motion for a new trial?    The alleged new and material fact, evidence of which is claimed to have been discovered by the movant after the rendition of the verdict against him, and after the overruling of his former motion for a new trial, is that a marriage in fact—one solemnized in accordance with a license and by a ceremony performed by a minister of the gospel—was entered into between the movant, Norman, and Henrietta Prescott, in Jacksonville, Florida, on February 23, 1865; and the alleged newly discovered evidence relating to this alleged new and material fact is the license and certificate found on file in the War Department at Washington, D. C.    All the other evidence attached as exhibits to the motion relates to this marriage license and the certificate thereon, and, disconnected therefrom, would not be considered as cause for a new trial.    Was the marriage in fact a new fact, which Norman did not discover until after the verdict against him?    In the nature of things it was not.  . He was a party to the marriage, and, of all persons, must have known that it had taken place.    But, aside from that, it appears from the record, in the affidavit made by the attorneys who represented Norman on the trial, that he knew and remembered the marriage in fact at and before the trial, and that these attorneys then knew of it.    The language of this affidavit, in reference to what these attorneys did before the trial, is:    "That they asked C. B. Norman who married him, and he answered that he got a marriage license in Jacksonville, Fla.,—not stating that a provost marshal issued same—and was married by a minister whose name he had forgotten and could not recollect; that they further enquired of Norman as to who was present at his marriage with Henrietta Prescott, and he was unable to give the names of any witnesses who were present."    If Norman had testified on the trial to what he then knew, that is, that he procured a license to marry Henrietta Prescott and that he was married to her by a minister, but that he could not remember from whom he procured the license, nor the name of the minister, then there would have been evidence of a marriage in fact between him and Henrietta Prescott, and all presumptions would have been in favor of the validity of such a marriage—that both parties consented, that they were both competent, that the minister officiating was authorized to perform the ceremony, and that the mar-

riage license was properly issued.　In other words, his testimony would have been evidence of a valid marriage in fact.　19 Am. & Eng. Enc. L. 1202 et seq.; *Dale* v. *State*, 88 *Ga.* 552, and authorities cited.　And who can say but that the jury would have believed his testimony and rendered a verdict in his favor ? If he, or his counsel, having evidence of a marriage in fact, were content to submit on the trial circumstances sufficient to prove only a presumptive marriage, over which a subsequent marriage in fact prevailed, then he must take the consequences.　Our opinion is that the alleged newly discovered evidence was not such as to require the grant of a new trial, even if tested by the rule applicable to ordinary motions for new trials.

Extraordinary motions for new trials, based on the ground of newly discovered evidence, are viewed by the courts with even less favor than original motions on such ground, and a stricter rule has been applied to the former.　In *Cox* v. *Hillyer*, 65 *Ga.* 57, it was held: "The extraordinary motions or cases contemplated by the statute are such as do not ordinarily occur in the transaction of human affairs, as when a man has been convicted of murder and it afterwards appears that the supposed deceased is still alive, or where one is convicted on the testimony of a witness who is subsequently found guilty of perjury in giving that testimony, or where there has been some providential cause, and cases of like character.　Whilst the newly discovered evidence now brought to the attention of this court discloses some facts not in evidence before, yet, in its general character and bearing, it is merely cumulative to the case heretofore presented, and would scarcely have produced a different result on the ordinary motion for new trial; much less can it give to this proceeding the peculiar characteristic of being 'an extraordinary motion.'"　It was said in *East Tenn. R. Co.* v. *Whitlock*, 75 *Ga.* 77, that the motion for new trial in extraordinary cases provided for in our code was intended in a great degree to take the place of a bill in equity for a new trial; and in *Robinson* v. *Veal*, 79 *Ga.* 633, it was held: "For equity to set aside a verdict at law on account of newly discovered evidence, the evidence discovered must be decisive of the controversy, and there must be no want of diligence to discover it before the trial at law."　In *Wimpy* v. *Gaskill*, Ib. 620, it was held:　"That, at the time of trial, certain letters relevant to the issue were misplaced, and after diligent search could

not be discovered, would lay the foundation for proving their contents. On discovery of the letters after verdict, etc., their contents not having been put in evidence, a bill for new trial is not maintainable because the letters were misplaced; more especially, if their contents would merely serve to corroborate one side in a conflict of parol evidence, and not of themselves be decisive of the controversy." In the opinion in that case it was said that if the lost instrument had been a contract between the parties, such as a deed or note, or perhaps a receipt, which would absolutely control the question at issue, and if there were no question of negligence, the bill would be one which equity ought to retain, and, if nothing else appeared, decree in favor of a new trial. In *Hays* v. *Westbrook*, 96 *Ga.* 219, it was held, that the trial court did not abuse its discretion in granting a new trial on extraordinary grounds. There the lost paper which was found after the trial was a deed to the property in question, and the movant had no notice or knowledge that the instrument existed until its accidental discovery after verdict. The ruling was, therefore, in accord with what was said in *Wimpy* v. *Gaskill*, supra. A certified copy of a marriage license, with the marriage certificate entered thereon, is not conclusive evidence of the marriage. It may be contradicted or shown to be a forgery. It is not in contemplation of law "the best evidence." It is of no higher grade than the testimony of witnesses. 1 Bish. Mar. Div. & Sep. § 991. Granting, therefore, that the certified copies of the license and certificate attached to the motion in this case could be considered as record evidence, it would not be absolutely decisive of the question in controversy, and therefore would not require the grant of the extraordinary motion for a new trial.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., and Lamar, J., who dissent.*