## BASS v. THE STATE.

1. The granting of a new trial on the ground of newly discovered evidence is not favored by the courts.
2. Evidence which in its nature is impeaching only affords no reason for the grant of a new trial.
3. Alleged newly discovered evidence is no cause for a new trial, unless it shall appear that the evidence itself is newly discovered, not merely that certain named witnesses by whom the facts can be proved were unknown until after the trial.
4. By the exercise of ordinary diligence the alleged newly discovered evidence could have been discovered in time for use upon the trial of the defendant.
5. The court did not abuse its discretion in overruling the defendant's extraordinary motion for new trial.

No. 3078. August 18, 1922. Rehearing denied September 20, 1922.

Indictment for murder. Before Judge Kent. Laurens superior court. January 30, 1922.

Marshall Bass was indicted for the murder of his wife on November 30, 1921. He was tried and convicted. He made a motion for new trial, which was overruled. He sued out a bill of exceptions, and brought the case to this court to review that judgment. This court affirmed the judgment. *Bass v. State,* 152 *Ga.* 415 (110 S. E. 237). During the January term, 1922, of Laurens superior court, he filed his extraordinary motion for new trial on the ground of the newly discovered evidence of L. F. Watson, Mrs. H. C. Woodard, and J. W. Bass. In support of this motion the defendant attached thereto the affidavit of L. F. Watson, who deposed that on the night that the defendant shot and mortally wounded his wife, deponent was deputy sheriff of Laurens county; that he was notified of the shooting; that he started to the scene of the crime; that on his way he met the defendant between the town of Dublin and the place of the alleged crime; that the defendant was walking on a part of the unfinished bridge, which had been about completed; that deponent stopped at the part of the bridge

that had not been finished across the river; that, throwing the lights of his car down said part of the bridge, he saw a person coming, and stopped and waited; that the defendant came right on to where deponent was; that when the defendant got to him he saw that he appeared to be drunk, did not seem to recognize him, although he had known deponent for years; that he put the defendant in his car; that finally, after talking to him for some time, the defendant seemed to know him; that the defendant appeared to be drunk, so much so that his reason was almost entirely dethroned; that he arrested the defendant and brought him to the county jail; that he appeared to be under the influence of whisky to the extent that he did not know what he was doing, or what any one around him was doing; that in fact he appeared to be in a perfect state of drunkenness, to the extent that his reason was gone; that when he was taken from jail by deponent to be carried to Macon, it took four people to carry him from the jail to the car in which deponent took him to the train; that when defendant was on the train between Dublin and Macon he acted and talked like a drunk man, was sick and had all the appearances of a drunk man; that on the way to Macon he vomited lots, and showed all the signs of a drunk man. Deponent is now the sheriff of Laurens County.

In further support of his motion the defendant introduced the affidavit of Mrs. H. C. Woodard, who deposed, that she is personally acquainted with the defendant; that she lived in about two or three hundred yards of the house where defendant lived on the 30th day of November, 1920, when he shot his wife; that she was at the home of the defendant on Sunday, the 28th of November, 1920, before the killing on the following Tuesday; that the defendant was at that time in a drunken state, which was manifested by crazy or unusual actions; that he seemed to be out of his right mind; that she saw him most every day; that she lived near him and knew him well; that she was at his home on Tuesday, November 30, 1920, going there about 12 o'clock and leaving about three o'clock; that he was in a drunken state at this time, acting out of the ordinary, apparently drunk or crazy; that she saw him take a drink of whisky on said date at said place; that he left his home sometime in the afternoon while she was there; that Mrs. Helen Sheffield told her on Wednesday, after said shooting of his

wife by the defendant, that she did not see the shooting, that she did not know anything about it until the shooting had taken place, that she did not see Marshall Bass there shoot his wife, and that she was in the kitchen and could not see the same in her position.

The defendant introduced also the affidavit of J. W. Bass, who deposed that he is the father of the defendant; that he was living at the home of the defendant on November 30, 1920, that he had been living there for a period of two weeks; that the defendant had been drunk from November 27 to the date of the killing, including Sunday, Monday, and Tuesday, that he was drunk at the time he shot his wife; that he saw him immediately before the shooting; that the defendant was in a crazy, drunken, and prolonged drunken stage and state; that the defendant did not know what he was doing; and that deponent could not reason with his son during any time of the three days previous to the shooting of his wife.

Also, the affidavit of R. S. Thomas and Ragan Hubbard, in which they deposed that they had known Mrs. H. C. Hubbard personally and well for 25 years; that she has a good reputation in the community in which she lives, and is well worthy of belief, and is of good character.

Also, the affidavit of W. N. Watson, who deposed that he was sheriff of Laurens county on November 30, 1920, when the defendant, after shooting his wife, was brought to jail; that to the best of his knowledge the defendant was drunk, although he did not see him drink any whisky or any other thing, but smelt something that smelt like whisky, and he believes it was whisky; that after Bass had been incarcerated in jail for a short while he was so drunk that it required the services of four men to put him into the car to take him to the train where he was to be transferred to the Bibb county jail; and that the defendant did not know any more than a dead man, according to deponent's knowledge and belief, and he believes defendant to have been drunk.

T. W. Watson made affidavit that he had known J. W. Bass for a period of four or five years; that Bass is a man of good character and morals in every respect, has a good reputation in the community in which he lives, and is well worthy of belief.

The defendant made affidavit, that he had made a diligent

search for any and all evidence concerning his case, that he had exercised every effort that he possibly could and had at his disposal in search of evidence; that he did not know that Mrs. H. C. Woodard knew anything about his case, or that she knew anything about what Mrs. Sheffield told her, or that she would testify in said case to anything, either material or immaterial in said case, until the 18th day of January, 1922, and until after the verdict of the jury had been rendered for several months; that she had informed him of the said conversation with Mrs. Sheffield and related to him the other facts in said case on said above date; and that Mrs. Woodard made an affidavit for the purpose of being used on his extraordinary motion for new trial.

Counsel for the defendant deposed, that they did not know of the newly discovered evidence of L. F. Watson, Mrs. H. C. Woodard, W. N. Watson, and part of the evidence of J. W. Bass, the father of the defendant; that they did not know of the existence of such evidence before the trial; and that the same could not have been discovered by the exercise of ordinary diligence.

The court overruled the motion, and the defendant assigned error.

*John R. Cooper* and *W. O. Cooper Jr.,* for plaintiff in error.

*George M. Napier, attorney-general, E. L. Stephens, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

HINES, J. (After stating the foregoing facts.)

The court did not err in overruling the extraordinary motion for new trial. The granting of a new trial on the ground of newly discovered evidence is not favored by the courts. *Perry* v. *State,* 117 *Ga.* 719, 720 (45 S. E. 77) ; *Norman* v. *Goode,* 121 *Ga.* 449 (49 S. E. 268) ; *Burge* v. *State,* 133 *Ga.* 431 (66 S. E. 243).

The essential and vital elements of this ground of a motion for new trial are well defined. Penal Code, § 1088. The newly discovered evidence refers to two different subjects. One deals with the impeachment of Helen Sheffield, who was sworn as a witness on the trial of the defendant, and who swore that she was an eye-witness and witnessed the shooting of his wife by the defendant. In her affidavit Mrs. H. C. Woodard swears that Mrs. Sheffield stated to her, on Wednesday after the shooting, that she did not see it and did not see the defendant shoot his wife. This evidence is impeaching, and affords no legal reason for the grant of a new trial.

*Johnson* v. *State,* 149 *Ga.* 214 (99 S. E. 609) ; *Wheeler* v. *State,* 149 *Ga.* 473 (100 S. E. 568) ; *Collins* v. *State,* 151 *Ga.* 431 (107 S. E. 159). The other branch of the newly discovered evidence relates to the intoxication of the defendant at the time and shortly after the commission of the homicide. The evidence is embraced in the affidavits of L. F. Watson, W. N. Watson, Mrs. H. C. Woodard, and J. W. Bass. The extraordinary motion for new trial is verified by the defendant to the best of his knowledge and belief. As to the evidence of L. F. Watson, the motion recites that the defendant " has learned that he can prove by L. F. Watson . . that he was under the influence of whisky at the time of the alleged homicide in this case." He does not state that he had learned this fact since his trial. As to the testimony of Mrs. H. C. Woodard, the motion recites that the defendant " has learned since the trial of said case, for the first time, that he can prove by Mrs. H. C. Woodard that he was drunk at the time of the alleged homicide, and had been drunk for several days." As to the testimony of J. W. Bass the motion recites that " the defendant has learned, since his trial and conviction, . . that he can prove by his father, J. W. Bass, that he was under the influence of liquor for several days before the killing of his wife." As to the testimony of W. N. Watson the motion recites that " the defendant has learned of this evidence since his trial and conviction of the offense of murder in Laurens superior court, charged with killing his wife."

Attached to this motion is an affidavit of the defendant, in which he makes no reference whatever to the alleged newly discovered evidence of L. F. Watson, W. N. Watson, and J. W. Bass, but in which he swears " that he did not know that the said Mrs. H. C. Woodard knew anything about the said case, or that she knew anything about what Mrs. Sheffield told her, or that she would testify in said case to anything either material or immaterial in said case, until the 18th day of January, 1922, and until after the verdict of the jury had been rendered for several months," when this witness " informed him of the said conversation with the said Mrs. Sheffield and related to him the other facts in said case on said above date."

Alleged newly discovered evidence is no cause for a new trial, unless it shall appear that the evidence itself is newly discovered,

not merely that certain named witnesses by whom the facts can be proved were unknown until after the trial. *Burgess* v. *State,* 93 *Ga.* 304 (20 S. E. 331) ; *Jinks* v. *State,* 117 *Ga.* 714, 716 (44 S. E. 814).

Mrs. Woodard lived within two or three hundred yards of the defendant, and by the slightest diligence the defendant could have discovered whether this witness knew the facts sought to be proved by her. *Georgia Life Insurance Co.* v. *Hanvey,* 143 *Ga.* 786, 788 (85 S. E. 1036). For the same reason the defendant could easily have learned what his father knew about the facts of this case, as his father was living with him at the time of the homicide. Both L. F. Watson and W. N. Watson were officers who were connected with the arrest and incarceration of the defendant; and he could easily have learned from them all facts which they might know which were material to his defense. By the exercise of ordinary diligence the alleged newly discovered evidence could have been discovered in time for use upon the trial of the defendant. *Tilley* v. *Cox,* 119 *Ga.* 867 (4) (47 S. E. 219) ; *Srochi* v. *Ventress,* 140 *Ga.* 345 (78 S. E. 1003) ; *Jones* v. *Waters,* 148 *Ga.* 284 (96 S. E. 386). The court did not abuse its discretion in overruling the defendant's extraordinary motion for new trial.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent.*