20712. BONNER *v.* THE STATE.

DECIDED OCTOBER 8, 1930.

*R. D. Jackson, Smith & Millican, Willis Smith,* for plaintiff in error.

*W. Y. Atkinson, solicitor-general, L. B. Wyatt, A. B. Taylor,* contra.

BLOODWORTH, J.   We will discuss headnotes 2 and 3 only.

(2)   "Ordinary motions for a new trial on the ground of newly discovered evidence are not favored, and extraordinary motions upon this ground are less favored." *Perry* v. *State,* 117 *Ga.* 720 (45 S. E. 77).   In *Brown* v. *State,* 141 *Ga.* 785 (82 S. E. 238), Lumpkin, J., said: "In *Young* v. *State,* 56 *Ga.* 403, Bleckley, J., said (p. 405): 'It was early ruled by this court that newly discovered evidence was not a favored ground for new trial: 10 *Georgia Reports,* 512; 12 Ibid. 500.   If this ground was not favored then, how watchful of it should we be now?'"   See *Norman* v. *Goode,* 127 *Ga.* 449 (49 S. E. 268).   Newly discovered evidence which is cumulative and tends to establish a fact in relation to which there was evidence on the trial is not cause for a new trial.   *Stubbs* v. *State,* 41 *Ga. App.* 836 (155 S. E. 100), and cit. Before a new trial should be granted on the ground of newly discovered evidence it must appear that the "newly discovered evidence is not cumulative only nor solely to impeach the credit of a witness." *Burge* v. *State,* 133 *Ga.* 431 (2) (66 S. E. 243).   See *Morris* v. *State,* 167 *Ga.* 286 (2) (145 S. E. 445); *Burnett* v. *State,* 36 *Ga. App.* 647 (137 S. E. 796); *Key* v. *State,* 21 *Ga. App.* 795 (95 S. E. 269).   The alleged newly discovered evidence embraced in special grounds 2, 4, 5, 10, and 11 is merely cumulative or impeaching in its character, and under the ruling in the foregoing cases none of these grounds require the grant of a new trial.   Calling specific attention to the evidence on the trial of which the alleged newly discovered evidence is impeaching, we find that in special grounds 2, 3, 9, 10 and 11 each ground relates to an effort made by the deceased to kill the defendant.   On the trial of the accused

J. W. Griffin testified that the defendant told him that Traylor (the deceased) had threatened his life. In his statement the defendant said that the deceased "threatened and assaulted me time after time, and my sister, his wife, told me that he had threatened to kill me. Another sister in Alabama wrote me he had threatened to kill me . . He had threatened me time after time. People told me he had threatened me and were scared for me, and I was scared for myself." The accused stated also that one Fred Robinson told him that the deceased had threatened to "stamp his insides out." The alleged newly discovered evidence in special grounds 4 and 5 alleges that just after and just before the shot the deceased had a knife in his hand. As to this Earnest Smith swore on the trial that just after the first shot was fired "Traylor had his hands up this way [indicating], and he had something in his hand that looked like a knife. I could just see the butt of it in his hand. . . When I got out there Mr. Traylor still had something in his hand that looked like a knife in his hand,—knife handle. . . The next time I saw Mr. Traylor it looked like he was raising his hand with the butt of the knife in it." S. A. Pounds testified that "As to what Mr. Traylor had in his hand I answer it looked like a knife he had in his hand. It was shut. . . I could tell the man had the butt end of a knife. I could see that when me and Mr. Smith got out there. I could see Traylor had an instrument in his hand that looked like a knife. . . Mr. Bonner was begging Mr. Traylor to put up his knife. I never did see Mr. Traylor put his knife in his pocket. He had it in his hand. He had it in his hand the last I saw him. When he started toward the car he still had his knife in his hand." Appleton McKinley also swore: "When I first got out there Mr. Traylor had a knife in his hand." In his statement the defendant said that the deceased "had a knife in his hand cutting at me, and I begged him to put his knife up. I told him to put it up and he wouldn't do it."

3. In special ground 12 the alleged newly discovered evidence is that of T. F. Griffis who makes an affidavit that just after the last shot was fired "affiant asked Mr. Traylor if he was hurt, and Traylor stated to affiant that he was shot all to pieces, but that he was the cause of it; that he ran on him with his knife." This evidence is impeaching of the witnesses for the State. Dewey Hyde swore: "I saw both parties there and I saw what happened. Tray-

lor never did anything to Bonner. He made no effort to hurt Bonner in any way. . . Traylor did not strike Bonner, ne'er a time, never did hit him at all and never attempted to hit him." John Samples swore that during the difficulty he "did not see Mr. Traylor doing anything to Mr. Bonner at all." Mrs. McWhorter testified: "I never did see Mr. Traylor do anything to Mr. Bonner." Mrs. Allen testified that when the first shot was fired Mr. Traylor was just standing there and making no effort to hurt Bonner that she saw. Ruth Blackwelder swore: "I never did see Mr. Traylor do anything to Mr. Bonner." Moreover, the State made a counter-showing as to this ground, and the issue to be determined was for the trial judge.

There is nothing in the extraordinary motion which shows that the trial judge abused his discretion in refusing the same.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*