## 54258. ATLANTA WAREHOUSES, INC. et al. v. HOUSING AUTHORITY OF ATLANTA.
## 54596. KLUGER et al. v. HOUSING AUTHORITY OF ATLANTA et al.

WEBB, Judge.

The Housing Authority brought this condemnation proceeding to acquire approximately 38 acres of land located in southwest Atlanta in conjunction with future development of a MARTA station. The appellant condemnees are Atlanta Warehouses, Inc. (owner of the land), Southeastern Industries Company (owner of the buildings and improvement) and West End Warehouses (an assignee of Southeastern Industries' right to a portion of the condemnation proceeds). The special master held numerous hearings on the value of the property and on November 28, 1975, awarded the condemnees $4,360,000. The condemnees appealed to the superior court where the jury rendered a verdict in the amount of $4,100,000 plus expenses and attorney fees. A motion for new trial was denied and appeal is now made to this court.

1. The condemnees contend that the trial court erred in allowing M. Tigner Wiggins, a witness called in rebuttal by the Housing Authority, to testify over objection that two years prior to the date of taking the managing general partner of Southeastern Industries, Milton Kestenberg, told him that the owners had contracted to sell the property for $4,000,000. We do not agree.

The Housing Authority presented two witnesses who testified that the property was worth $4,000,000 and $4,100,000. The condemnees also presented two witnesses, one of whom testified that it was worth $5,000,000. Their second witness, Leigh Baier, testified that he thought it was worth $7,300,000. Baier is president of West End Warehouses and president and chairman of the board of the Baier Corporation, its parent corporation. Milton Kestenberg as managing general partner of Southeastern Industries was the person with whom Adams-Cates Company, the real estate broker which operated the property, dealt exclusively. Wiggins was a vice-president of Adams-Cates. He testified that the

property had been put up for sale with Adams-Cates on previous occasions, with Kestenberg representing all the owners in dealing with Adams-Cates.

Prior to trial a notice to produce was served on counsel for the condemnees to produce any "contract or option to purchase executed within the last five years covering the subject fee simple interest, between the owner of said property and anyone, including but not limited to Leigh Baier, or the latter's corporation, partnership, or any entity in which he owned an interest." The Housing Authority's counsel informed the court and opposing counsel at the outset of the trial that this contract would be offered as substantive evidence of value as an admission by the party defendants or as impeachment evidence, and that Wiggins would testify that Kestenberg had told him of this contract to sell the land and improvements thereon for $4,250,000.

Baier testified upon the trial that he could not locate such a contract or any copy of it, but that there had been contracts or options to sell the property in the past. He denied that there was a contract for the sale of the property at $4,250,000. Wiggins was called as a rebuttal witness and testified that Kestenberg had told him that the owners wanted to clear $4,000,000 net. Upon objection the court limited the admissibility of Wiggins' testimony, stating that "It would not be binding on someone over whom he had no control. . . Anything that this gentleman said would be hearsay as to anyone else, would not be binding on him and the jury could not consider it as having any probative value." The court reiterated its instructions as to the limited use to be made of Wiggins' testimony throughout the entire period he was on the stand. On cross examination Wiggins conceded that Kestenberg might have been talking about selling the buildings for $4,000,000 and exercising an option to buy the land for $1,000,000, but stressed that Adams-Cates had always listed the property to include the land, buildings and appurtenances. Baier was not recalled to rebut any of Wiggins' testimony.

Even if this evidence was not admissible for substantive evidence of value as an admission of the partnership, and we think that it was (see *Boswell v.*

*Blackman,* 12 Ga. 591 (1853)), it was clearly proper for purposes of impeaching Baier's credibility. "Evidence tendered for impeachment purposes need not be of the kind or quality required for proving the facts. For example, the evidence tendered may be generally inadmissible because it is hearsay, but that is not a good ground for excluding it. [Cits.]

" 'A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case.' Code § 38-1803. There can be no doubt that the condemnee's value of the land as reflected in [the contract] is relevant to his testimony on the same subject, and the whole question to be resolved in the trial of the case is that of the value of the lands being taken. Any writing by a party or witness testifying which is in conflict with his testimony is admissible for the purpose of impeachment, e.g., a letter written by the witness fixing value, though written as much as two years prior to the transaction in question, *Reeves v. Callaway,* 140 Ga. 101 (1) (78 SE 717), or a letter written three years prior to a homicide in which statements were made contradictory of those made at the trial, even though directed to a third party, *Beckworth v. State,* 183 Ga. 871 (4) (190 SE 184), and the return of an appraiser in a condemnation case which is contradictory of his testimony on the trial may be introduced for the purpose of impeaching him though it is generally inadmissible. [Cits.]" *State Hwy. Dept. v. Raines,* 129 Ga. App. 123, 127 (3) (199 SE2d 96) (1973); see also *DeKalb County v. Queen,* 135 Ga. App. 307, 309 (4, 5) (217 SE2d 624) (1975).

Although *Raines* and its progeny deal with tax assessments, " 'it is an open secret that the assessment rarely approaches the true market value.' " *Housing Authority of Atlanta v. Republic Land &c. Co.,* 127 Ga. App. 84, 85 (192 SE2d 530) (1972). We think these impeachment principles should be even more applicable to contracts or options to sell freely made in the course of arm's length business transactions on the open market.

2. The condemnees' claim that the court erred in charging the jury that it could consider the testimony regarding Kestenberg's statement as proof of value against all the condemnees is without merit. In fact the

court repeatedly instructed the jury that this testimony was binding on no one but "that witness and those who have joint ownership with him," and that it "could not consider it as it reflects on the property rights of any other defendant." At any rate, as we held in Division 1, supra, this evidence was admissible for the purpose of impeaching Baier's testimony. The court gave general charges on the credibility of witnesses at the opening and close of the evidence, and "in the absence of a timely request to charge on impeachment, the failure to so charge is not error. [Cits.]" *Butts v. Davis,* 126 Ga. App. 311, 317 (9) (190 SE2d 595) (1972).

3. Error is assigned to the trial court's instructions to the jury that the property "must be evaluated by the existing zoning regulations and existing uses." Condemnees insist that this was harmful to them since their entire case was based upon the future potential of the property after rezoning, whereas the Housing Authority relied on a valuation predicated upon its use at the time of taking. Examination of the transcript, however, reveals that the court adequately charged both theories.[1] See *Civils v. Fulton County,* 108 Ga. App. 793, 795 (2) (134 SE2d 453) (1963); *Edwards v. Delvero,* 139 Ga. App. 880, 881 (2) (229 SE2d 763) (1976).

4. In support of their motion for new trial on the

---

[1] Pertinent provisions of the charge are as follows: "I charge you that while you may, in determining the value of the property condemned, consider all uses to which it might reasonably be put, the mere possibility, if you find from the evidence that such existed, that it might in the future have been put to some use not permitted under the applicable zoning ordinance affecting the property at the time of the taking; that is, on December 1st, 1975, is not enough to authorize you to consider the effect of such a possibility in determining the value of the property.

"I charge you, however, that if there is a possibility or probability that the zoning restrictions may in the future be repealed or amended so as to permit use of the property for other purposes under different zoning regulations, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an

ground of newly discovered evidence condemnees filed an affidavit of Tigner Wiggins. Upon the trial Wiggins had testified that the contract signed by the condemnees included the buildings and the land, but he did not specify whether the $4,000,000 price included $1,000,000 to be paid to Atlanta Warehouses when the lessee exercised its option to purchase the land, or whether it was an additional sum to be paid by the potential buyer. In his affidavit, however, Wiggins swore that at no time did Kestenberg claim that the $4,000,000 price included the land because Southeastern Industries did not own the land.

We find no abuse of discretion on the part of the trial court in refusing to grant a new trial. The alleged "new evidence" merely explains in further detail Wiggins' trial testimony. Moreover, it appears from the trial transcript that objections from condemnees' attorney prevented this information from being elicited upon direct examination of Wiggins by the Housing Authority. Of course the best evidence of the exact terms of the contract would have been the writing itself, but the condemnees repeatedly denied access to it. However, being parties to it they must have known the terms of the contract before the trial.

"As has been announced in many adjudicated cases, courts view with disfavor and caution, if not with suspicion, motions for new trials on the ground of newly discovered evidence. It is a most salutary requirement that each party is bound, at his peril, to submit on the trial all

appreciable influence on the present market value. Such possible changes in zoning regulations must not be remote or speculative.

"I charge you further that in such an event the property must not be evaluated as though the zoning were already an accomplished fact, but it must be evaluated by the existing zoning regulations and existing use, and then consideration given to the impact upon the market value in the event of a change in the zoning regulations.

"Now, the question of the existence of a reasonable possibility or probability of a change in zoning regulations is a question of fact for you, the jury, to determine."

competent evidence he has on hand. Otherwise trials would be speculative and the end of litigation remote. The general rule is, that if a party had knowledge of a fact at the trial and it could have proved then by evidence other than the newly discovered, a new trial will not be granted, unless the applicant can satisfactorily explain why he did not attempt to use the evidence at hand. [Cit.]" *Norman v. Goode,* 121 Ga. 449, 453 (49 SE 268) (1904).

In his affidavit Wiggins does not say that after the verdict he discovered from the contract or subsequent conversations with Kestenberg that he was in error at the time of the trial—he merely explains his prior testimony. A mere allegation that the evidence could not have been discovered by ordinary diligence is not sufficient. *Downs v. State,* 141 Ga. App. 173 (233 SE2d 32) (1977). Not only is this not new evidence, it satisfies none of the requirements set forth in *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) (1971).

We find no basis for reversal for any reason assigned.

5. A judgment was entered jointly and severally against Southeastern Industries, Atlanta Warehouses, West End Warehouses and the appellants in the companion case to this appeal, Fannie Kluger, Leo Warner and Milton Kestenberg, for $215,248.43, the difference between the judgment and the special master's award. The judgment was entered against Kluger, Warner and Kestenberg as general partners of the limited partnership, Southeastern Industries, as signers of the disbursal agreement between the parties in the event of reduction of the award, and for the stated reason that Kestenberg had drawn $100,000 of the condemnation proceeds from the registry of the court. These appellants filed a motion to set aside the judgment, asserting that they were not subject to the personal jurisdiction of the court nor liable for the judgment against Southeastern Industries. The motion was denied and the instant appeal (No. 54596) was filed.

(a) Appellants argue that a condemnation before a special master under Georgia Code Title 36-6A is an in rem proceeding, that no service of process was made against them as New York residents pursuant to the Georgia long-arm statute (Code Ann. § 24-113.1) or under

Code Ann. § 81A-104 (d), and that thus a judgment cannot be entered against them. We do not agree.

Requirements for service of process in a condemnation case are set forth in Code Ann. § 36-610a and the provisions cited by appellants are inapplicable. While Code Ann. § 36-605a does recite that "the cause (the condemnation proceeding) shall proceed as in rem," § 36-615a provides that "if the verdict of the jury be less than the award of the special master, the *owner* shall be bound to refund any excess paid to or received by him and a judgment for such excess shall be rendered against him . . ." (Emphasis supplied.) The judgment authorized by § 36-615a is clearly an in personam judgment, and it is undisputed that the appellants were properly served under § 36-610a with copies of the complaint as persons "known to have any title or other interest" in the property. See *Roberts v. Wise,* 140 Ga. App. 1, 3 (230 SE2d 320) (1976).

(b) Judgments may be entered and executed against partnerships, and service of process on one or more of the partners will authorize a judgment against the partnership binding all firm assets, and individually binding the property of the partners who are served. Code § 75-312; see generally 23 EGL, 431, Partnership, § 26, and cases annotated therein. Nor is it necessary, as insisted by appellants, that the individual partners be named as parties defendant along with the partnership. *Hollister Bros. v. Bluthenthal & Bickart,* 9 Ga. App. 176 (1) (70 SE 970) (1911). "The rationale is that the law does not look upon the partnership as a completely distinct and separate legal entity, but as somewhat so; the partners, as to partnership debts, are joint contractors; and each is the agent of the other to a limited extent. When suit is brought for a debt due by the partnership, the plaintiff may hold the individual partners liable by serving them." *Higdon v. Williamson,* 10 Ga. App. 376, 377 (1) (73 SE 528) (1912); *Broome v. Graham,* 99 Ga. App. 682, 684 (1) (109 SE2d 824) (1959).

Under the Georgia Uniform Limited Partnership Act, "A general partner in a limited partnership has the same rights and liabilities analagous to those of a partner in an ordinary general partnership, and he may become

individually liable for all of the debts of the [limited] partnership. Code Ann. §§ 75-410, 75-103; Crane on Partnership (2d Ed.) p. 112, § 26; 60 AmJur2d 261, Partnership, § 379." *Co-op Mtg. Investments Associates v. Pendley,* 134 Ga. App. 236, 239 (1) (214 SE2d 572) (1975); *North Peachtree I-285 Properties, Ltd. v. Hicks,* 136 Ga. App. 426, 432 (4) (221 SE2d 607) (1975).

"Unless otherwise provided in the agreement, partners shall be equally interested in all the stock or property brought into the business, it matters not by which; partners shall be equally entitled to share the profits and equally bound to pay the losses." Code § 75-206. Thus, under the authorities considered herein, it is manifest that the appellants as general managers held an ownership interest in the properties condemned as contemplated by Code Ann. § 36-615a, and were accountable and liable for the excess withdrawn by them from the registry of the court. And since they were specifically named and designated as persons to be served in connection with the limited partnership Southeastern Industries, and were properly served with process pursuant to Code Ann. § 36-610a, the trial judge did not err in entering the order individually binding them to the condemnation judgment.

*Judgments affirmed in both appeals. Deen, P. J., and Birdsong, J., concur.*

ARGUED SEPTEMBER 6, 1977 — DECIDED SEPTEMBER 28, 1977 — REHEARING DENIED OCTOBER 19, 1977 — 

*Heyman & Sizemore, William H. Major, William B. Brown,* for Atlanta Warehouses, Inc. et al.

*Harland, Cashin, Chambers, Davis & Doster, Harry L. Cashin, Jr., Thomas J. Venker,* for Kluger et al.

*Kidd, Pickens & Tate, Charles M. Kidd, William H. Major,* for appellees.

ON MOTION FOR REHEARING.

Appellants Kluger, Warner and Kestenberg assert for the first time on motion for rehearing that even assuming service of process to be governed by Title 36-6A,

it was not proper since Code Ann. § 36-610a requires nonresident service by registered mail and they were served by certified mail. They cite *Johnson v. Johnson,* 218 Ga. 28, 30 (5) (126 SE2d 229) (1962), wherein Chief Justice Duckworth stated by way of obiter dictum that a statute requiring registered mail should be strictly construed. They reiterate their argument that they should have been made parties defendant before any service could properly be made upon them.

We decline to reverse the trial court upon these grounds at this time. "Condemnation is a special statutory procedure and Code Ann. § 36-605a provides that upon petition, the superior court shall make an order requiring all persons concerned to appear before a special master, between 10 and 15 days from service, to make known all matters material to their rights. The petition and order serve as all necessary process. The court may also order a continuance for good cause. Code Ann. § 36-611a.

"We believe this sets up a specific rule of practice and procedure, especially in view of the stated purpose of the chapter, i.e., 'to provide a simpler and more effective method of condemnation' where there is a 'necessity for a quick determination' or where, for several reasons, a judicial supervision is desirable. Code Ann. § 36-602a. It is well established that all legal issues relating to the condemnation may be raised and determined in the special master proceeding. If no exceptions are taken to the master's findings or no regular appeal taken from the judgment based on his award, the only issue remaining is that of value. [Cits.]

"It seems clear that where there has been a final adjudication in a proceeding *designed* to be expeditious, a party may not later tender an answer to the petition under general rules of civil practice. The time for the filing of defensive pleadings (as opposed to their sufficiency) is governed by the duration of the special statutory procedure." *Nodvin v. Ga. Power Co.,* 125 Ga. App. 821, 822 (2) (189 SE2d 118) (1972).

"All the more is it true that one who fails to file a proper claim or make a timely protest to the judgment may not, after many terms of court have intervened, open

up the case on the sole ground that he is entitled to a portion of the proceeds." *Roberts v. Wise,* 140 Ga. App. 1, 3, supra.

The condemnation petition here was filed against, among others, the limited partnership Southeastern Industries, specifically designating and serving the three general partners Kestenberg, Warner and Kluger by sending each of them a copy of the complaint by certified mail. No motions for insufficiency of process were filed. A condemnation hearing was held at which the partnership and the other fee simple interest holders were represented by counsel. Atlanta Warehouses, West End Warehouses, Irving Trust Company and Southeastern Industries by and through Kestenberg, Warner and Kluger, each of whom signed a document entitled "Agreement as to Disbursement of Condemnation Proceeds," agreed how they would draw the funds once the award was entered and paid into court. This document was filed, and it was not filed in the nature of a special appearance. Pursuant thereto, upon payment into the registry of the court of the award of $4,360,000, an order was obtained disbursing the funds with Kestenberg receiving $100,000. Not until after the appeal. and trial of the case in which the jury returned a verdict of $4,100,000 and the court subsequently awarded attorney fees and expenses to the condemnees did these appellants allege lack of service in their motion to set aside the judgment.

It is clear that here, as in *Taylor v. Taylor County,* 231 Ga. 209, 210 (200 SE2d 887) (1973), "the condemnees had adequate notice of the special master hearing, they filed defenses that were considered and ruled on by the special master, and after the special master's award they filed an appeal to a jury in the superior court. *Under these circumstances, the rights of the appellants were adequately protected even if they had no service at all prior to the special master hearing."* (Emphasis supplied.) Thus, we do not reach the question of whether service by certified mail was improper, for under the interpretation of the condemnation statute set forth in the *Taylor, Nodvin* and *Roberts* decisions quoted above the issue was not timely raised and must be deemed waived. See also in this connection Code Ann. §§ 81A-112 (b) (4), (5), 81A-112 (h),

6-810. Remaining grounds of the motion for rehearing having been considered and rejected on appeal, it must therefore be denied.