## PATTERSON *vs.* COLLIER, executor.

1. Exhibits annexed to a motion for a new trial and referred to therein as annexed are part of the record, and though constituting the evidence on which the motion was decided, they need not be incorporated in the bill of exceptions.

2. An extraordinary motion for a new trial, based alone upon newly discovered evidence, ought not to prevail, unless there has been full diligence to procure the evidence before the trial; nor unless the new evidence would probably produce a different verdict if a new trial were had.

3. A general statement that all possible diligence was used may need reduction to particular acts; and affirming that inquiry was made of numerous persons, every person, etc., may not suffice where no names of any persons are mentioned and no reason assigned for the omission.

4. That a deed bears date in 1838, is attested by a justice of the peace who was not commissioned until 1841, and is on paper bearing the water-mark "1840," will justify a strong suspicion of its want of genuineness, more especially if the body of it is in the handwriting of the feoffee, and the signature is apparently in the same handwriting with the body.

February 8, 1887.

Practice in Supreme Court. New Trial. Practice in Superior Court. Deeds. Forgery. Before Judge FORT. Stewart Superior Court. April Term, 1886.

In an action of ejectment of *Collier et al., executors, vs. Patterson*, one of the plaintiffs, by affidavit, raised an issue of forgery on a deed from Anderson Covington to G. W. Hamil, which formed part of the chain of title of the defendant. The jury found the issue for the plaintiffs. The case was carried to the Supreme Court, and there the judgment was affirmed (see 75 *Ga.* 419.)

On January 20, 1886, the defendant made a motion for a new trial on the following extraordinary grounds:

(1.) Because, since verdict rendered upon said issue of forgery as to the deed from Anderson Covington to G. W. Hamil, dated November 25th, 1838, and attested by Jonathan L. Hamil and John Mays, J. P., conveying lot No.

42, in 22d district of Stewart county (being the lot in dispute), a copy of which deed was used on the trial of said issue in lieu of the original, whose loss defendant could not then on said trial account for, the original deed has within the last month been unexpectedly discovered by movant, and is now in his possession; its production or inspection, coming from the proper custody, being the highest evidence of its genuineness, not merely cumulative in its character and pointedly material.

(2.) Because, since said verdict was rendered and within a month, movant has unexpectedly and almost accidentally discovered, and learned the whereabouts of, one Jonathan L. Hamil, who will testify that he is the identical Jonathan L. Hamil who attested said original deed; that he saw Anderson Covington, his brother-in-law, sign, seal and deliver said deed; that being called on so to do, he attested said deed as witness and saw John Mays, J. P. (being likewise so called upon), in like manner attest the same, and that the said John Mays was at the time, being the day the instrument bears date, a justice of the peace so acting; that grantor and grantee are both now dead.

(3.) Because both movant and movant's counsel used extraordinary diligence before the trial in searching for said missing deed, and for the whereabouts of said missing witness, and all without avail; that they exhausted all sources of information as to the whereabouts of both, and finally gave up further search as useless, till one of his attorneys, about a month ago, heard in a remote part of Alabama the name of Hamil, and began inquiry and through him traced out said Jonathan L. Hamil, an obscure farmer, and amongst his father's papers had the said deed unearthed.

[The original deed and affidavits of Jonathan L. Hamil and of J. M. Hamil were attached as exhibits to the motion. From these it appeared that G. W. Hamil, the alleged grantee, formerly resided in Pike county, Georgia; that he removed to Russell county, Alabama, in 1844, and

afterwards to Coffee county, Alabama, in 1856, where he resided until his death; that then his papers were left in the hands of his son, J. M. Hamil, who, on search made recently, found the deed. The affidavits also tended to show the genuineness of the instrument.]

Patterson, the movant, made affidavit that he had seconded the efforts of his counsel "by using all due and possible diligence, as best he knew how," in searching for the deed and the attesting witness (the other one being dead), and had given up the search as hopeless.

The various counsel for the movant made affidavits, in which it was stated that they used "great and extraordinary diligence in searching for said deed" and for the Hamils, making inquiries of old inhabitants of the former place of residence of the family, etc.; also that the deed and witness were discovered by accident, as set out in the third ground of the motion. Another stated that he had "used all diligence" to find the deed and the attesting witness. Another stated that they "had extensive inquiries made in Pike county; that he himself personally inquired of different persons," etc. It was also stated that the original counsel in the case (B. S. Worrill) had died, and that counsel believed that during his lifetime he had made a search for the deed unavailingly. One of counsel stated that he had advised that the papers of preceding counsel be searched, and that he believed it had been done.

There were also other affidavits as to the character of the new witnesses and other documents attached to the motion.

Cause was shown against the grant of the new trial, on the following among other reasons: Because the new testimony was merely cumulative; because, from the answers of a witness to interrogatories taken to be used on the trial of the issue of forgery, it appeared that when G. W. Hamil moved from Pike county, he went to Russell county, Alabama, near Sandfort, which is within a day's journey of movant's residence; that the deed and witnesses were

found near that point, and movant could have discovered the testimony before the trial by the use of due diligence. Also because, on a former trial, movant testified that he held under Elizabeth Pitts, administratrix, and it appeared from answers of Elizabeth Pitts to interrogatories in a former suit respecting the land, that she sent her deeds to B. S. Worrill, as her attorney. Also because the deed purported to have been executed in 1838, while the water-marks on the paper showed that it was not manufactured until 1840. A deed from Covington to one Burke also was tendered for comparison; and it was asserted that the newly discovered evidence could not, if presented on the trial, have changed the result.

The presiding judge overruled the motion, stating the following in his order :

" The evidence submitted by both parties, in the judgment of the court, fails to show that the movants had exercised that diligence to procure the testimony now relied on which the law exacts of them. But in addition to this trouble, the court is not satisfied that the evidence submitted is such as would probably change the verdict. A careful inspection of the deed from Anderson Covington to G. W. Hamil does not satisfy the mind of the court of its genuineness. The paper on which the deed is written bears, in the water-mark, the figures 1840, yet the deed purports to have been made in 1838. The witness who testified as to its execution states that the body of the deed was written by one Hamil, and there is a striking similarity between the signature of Anderson Covington, as grantor, to the handwriting in the body of the deed. Comparing this signature with the undisputed signature of Anderson Covington to the Burke deed, and the dissimilarity is more striking still. This same witness contradicts the records of the executive office as to the justice."

The movant excepted.

When the case was called in the Supreme Court, a motion to dismiss the writ of error was made on the ground that the evidence used on the hearing of the motion was not incorporated in the bill of exceptions, but was in the record. The motion referred to the affidavits and other testimony as attached as exhibits thereto and forming part thereof, and they appear in the record as so attached.

J. L. Wimberly & Son; W. A. Little; W. C. Worrill; R. F. Watts, for plaintiff in error.

W. D. Kiddoo, for defendant.

Bleckley, Chief Justice.

1. Exhibits annexed to a motion for new trial, and referred to therein as annexed, are part of the record proper, and though constituting the evidence on which the motion was decided, they need not be incorporated in the bill of exceptions. This overrules the motion which was made to dismiss this writ of error, which motion was founded on the fact that the bill of exceptions did not set out certain documentary matter that was annexed as exhibits to the motion for new trial, and which came up in the record, duly certified, as a part of the motion. We rule that whatever is an exhibit to the pleadings, and thus in the case all the time as a part of the pleadings, though it may be also part or the whole of the evidence, need not be put in the bill of exceptions, but may come up, both as evidence and pleading, under the clerk's general certificate to the transcript of the record. 62 *Ga.* 617.

2. An extraordinary motion for a new trial, based alone upon newly-discovered evidence, ought not to prevail unless there has been full diligence to procure the evidence before the trial; nor unless the new evidence would probably produce a different verdict if a new trial were had. There is nothing new in this proposition, and it is not worth while to pause to elaborate it.

3. A general statement that all possible diligence was used may need reduction to particular acts; and affirming that inquiry was made of numerous persons, every person, etc., may not suffice where no names of any persons are mentioned, and no reason assigned for the omission. The judge below, as appears from the record, was not satisfied with the diligence used. Exactly what the ground of dissatisfaction was in his mind, we do not know; but we can

see that he may have felt some curiosity to know what acts of diligence were performed; and when it was said that inquiry had been made of every person, etc., it might have occurred to him that it would have been well to mention some of those persons. None of them were named, I believe, in the showing made. Then, again, there was another matter for consideration: it was that the missing evidence was in the State of Alabama, not very far distant from the residence, in Georgia, of the movant; and there were certain indications not very thoroughly followed up, as to where the needed witness might have been found if he had been looked for.

4. That a deed bears date in 1838, is attested by a justice of the peace who was not commissioned until 1841, and is on paper bearing the water-mark, "1840," will justify a strong suspicion of its want of genuineness, more especially if the body of it is in the handwriting of the feoffee, and the signature is apparently in the same handwriting with the body. This deed, as to its genuineness, had once been litigated in its absence. The litigation was in Georgia (see *Patterson vs. Collier*, 75 *Ga.* 419), and at the time of trial the deed was in Alabama, and it never made its appearance in this litigation until after it was pronounced a forgery. It was discovered no very great while after being thus degraded, and made its appearance in court as the subject-matter of this extraordinary motion for new trial, and when examined it presented the marks that I refer to above. The judge, in adjudicating the extraordinary motion, was not satisfied that the verdict, upon a new trial, would or ought to be anything different from that which was rendered before, and we agree with him. So the judgment is affirmed.