*Anderson & Roberts,* contra.

---

### EUGEE *v.* THE STATE.

1. There being some evidence in the case tending to show that one of the motives for the homicide was robbery, the court did not err in permitting the husband of the decedent to testify that a few days before the date of the homicide he had turned over to his wife money to the amount of $40. While there was evidence showing that the decedent had paid out money on household expenses after the payment to her of the sum mentioned, this did not render the evidence of the amount which had been paid to her irrelevant and immaterial.

2. The husband of the decedent, who was a witness for the State, was asked, on cross-examination, "How long were you engaged in the moonshine business?" to which question the witness replied, "I don't know." The court properly excluded this evidence.

3. Exception is taken to the ruling of the court excluding the answers to the following questions: Q. "You have a little terrace alongside your house?" A. "Yes, sir." Q. "Under that terrace is hollow?" A. "You have to search me." Q. "Is it hollowed out?" The evidence elicited by these questions is apparently irrelevant, and the court did not err in excluding it.

4. The court did not err in excluding other evidence offered to prove that the witness had been engaged in the illegal manufacture of intoxicating liquor upon the premises where the homicide was committed.

5. Nor did the court err in refusing to permit the witness, James Mudie, the husband of the decedent, to answer, on cross-examination, the question as to whether burial or funeral services were held when his wife and little girl were interred. The witness had testified, in response to questions propounded to him, that he acknowledged "the existence of a God and hereafter," and this evidence was relevant and material, under the provisions of section 5857 of the Civil Code, which relates to religious beliefs affecting competency; but it was not competent to take up individual acts of the witness and inquire of him as to the significance of such acts when viewed from a religious standpoint. Otherwise, practically every act of a man's life might be taken up and examined into.

6. A witness for the State, on cross-examination, was asked the questions

following, and gave the answers stated: Q. "When Cæsar left your house you had a quarrel?" A. "I did not have a quarrel with Cæsar since I was born." Q. "Did this fuss follow some words about the fish?" A. "I did not have a quarrel. About four or five days after he moved he brought to my house some cocktail glasses and . . ." The court did not err in refusing to exclude this evidence, on motion of defendant's counsel, on the ground that the same was not responsive. Clearly certain parts of the answer were responsive; and if a part of the answer was not responsive, it should have been pointed out and specially designated and the motion to exclude should have been confined to that.

7. The evidence contained in the ground of the motion immediately following the one last disposed of, so far as appears from the statement of the ground of the motion itself, was clearly immaterial; and even if relevant, its admission is not shown to have been hurtful to the defendant.

8. In the 12th ground of the motion for new trial complaint is made of the admission of the following evidence, and the court's ruling: "I put them on the table, and he said, 'Jeannette, don't put those glasses on the table,' and I said, 'Why?' and he said, 'Because I don't want every one to see them.' I said, 'Cæsar, if you bring stolen goods here, I don't like it. You have silk shirts here and lots of other things, and you bring in the other glasses. I expect to be in bed and become a mother. I don't want any stolen things in my house, and you take these things out of here; and he got sore; and some of them have initials on them, and he had handkerchiefs piled that high [indicating] —handkerchiefs with people's initials on them. I believed he stole them." The court, to witness: "You stop right here." Court, to jury: "Strike out and do not consider her opinions. They have nothing to do with this case." Defendant's counsel: "We renew our objection to the entire matter," said objection being that said testimony was immaterial and was prejudicial to the defendant on trial; which objection was overruled by the court with the following observations: "The objection to the entire matter is overruled, and her expressions of opinion as to whether or not he got the things fairly or dishonestly you will not regard. Strike that testimony out from your consideration entirely. Don't consider that testimony. That testimony is stricken from the record." The witness whose testimony was excluded was a witness for the State. The ruling of the court excluded the material testimony hurtful to the defendant, and the immaterial testimony not covered by the ruling of the court is not shown to have been hurtful to the accused.

9. The witness, Mudie, as stated above, had been interrogated as to his belief in God, and had answered that he believed in God. For the purpose of impeaching him a witness for the defendant testified as follows: Q. "Shortly after the murder and before the burial of Mrs. Mudie, did you have a conversation with Mr. Mudie?" A. "I did. That morning at Mr. Sipple's place I asked him to get some one to say a few prayers over the body." Q. "Will you state, or the substance of it, what the conversation was with Mr. Mudie; state whether or not he made a statement to you as to his belief or disbelief in God?" Coun-

sel for movant, in reference to these questions and answers, stated: "For the sake of the record, we want to ask this question for the purpose of impeachment, because the witness Mudie testified that he believed in God and a hereafter. We expect to ask this witness what Mudie said to him in response to his request to have prayers over the body of Mrs. Mudie and the little girl, and that Mudie replied: 'I don't want prayers. I don't believe in God.' It is offered for the purpose of impeachment." The court excluded the questions and answers. This ruling was not error, as the proper foundation for the impeachment of the witness Mudie by contradictory statements had not been laid.

10. The court did not err in refusing to allow a witness for the defendant to answer the following question propounded on direct examination: "Do you know Jeannette's [a witness for the State] general character, her general reputation at that time for vindictiveness?" See section 5882 of the Civil Code, relating to impeachment of witnesses by proof of general bad character.

11. The state of a witness's feelings towards a party may be proved for the consideration of the jury; but it is not permissible, in order to illustrate the question of the state of the witness's feelings, to enter into the details of particular transactions, even though they tend to show a hostile feeling on the part of the witness to the accused; and the court properly excluded evidence offered for the purpose of showing that the witness had attempted to get a named person and his associates to go to the jail and take the accused therefrom, presumably for the purpose of doing violence to him.

12. The exception to portions of the charge of the court, on the ground that they misstated certain contentions of the accused, is without merit.

13. The court's charge to the jury upon the subject of alibi was as follows: "It is contended, as I understand, that the prisoner was not at the scene of the homicide; in other words, he sets up the defense of alibi. Alibi, as a defense, involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission; and the range of evidence, in respect to time and place, must be such as reasonably to exclude the possibility of presence. I charge you further, that when the defendant sets up, as a defense, an alibi, the burden is upon him to establish his defense of an alibi to your reasonable satisfaction, and it is your duty to consider the evidence on the question of alibi along with all the other evidence introduced in this case; and if all the evidence, including the evidence introduced on the question of alibi, creates in your minds a reasonable doubt as to the guilt of the prisoner, then it is your duty to give to the defendant the benefit of that doubt and to acquit him." This charge is excepted to upon the ground that it placed upon the defendant a burden of proof not imposed upon him by law, and that the contention of the defendant that he was not present at the scene of the homicide does not involve the affirmative defense of alibi and does not cast upon the defendant, as stated in the charge, the burden of making proof "in respect to time and place—such as reasonably to exclude the possibility of his presence" at the commission of the crime. The charge as given is a substantial statement of the law upon the subject dealt with, and

the charge upon the subject of alibi was proper; especially in view of the defendant's statement.

14. The evidence was sufficient to authorize the verdict.

No. 4306. JANUARY 20, 1925.

Murder. Before Judge Meldrim. Chatham superior court. March 10, 1924.

*A. J. Ryan Jr.* and *Charles D. Russell,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general* and *T. R. Gress, assistant attorney-general,* contra.

BECK, P. J. Cæsar Eugee was indicted and tried for the offense of murder, it being charged that he feloniously killed Agnes Mudie. The jury trying the case returned a verdict of guilty, with a recommendation. A motion for new trial was overruled, and the movant excepted, and by writ of error the judgment of the court below was brought here for review. The grounds of the motion are indicated by the headnotes, which do not require elaboration.

*Judgment affirmed. All the Justices concur.*