21068. MOSS *v.* THE STATE.

110

Decided April 1, 1931. Rehearing denied April 15, 1931.

*Hugh E. Combs,* for plaintiff in error.

*M. L. Fells, solicitor-general,* contra.

Luke, J. The indictment in this case charges that Will Moss committed the offense of murder on June 1, 1930, in the county of Wilkes, by driving a Nash sedan automobile against Stella Mc-Lendon. The defendant was convicted of involuntary manslaughter in the commission of an unlawful act. He excepts to the judgment overruling his motion for a new trial.

The general complexion of the case is as follows: Late Sunday afternoon, on June 1, 1930, eight young people were walking down the Lexington road towards Washington, Ga., Stella McLendon and Jim Smith being the rear couple, when a large closed automobile, also traveling in the direction of Washington, and running very rapidly, struck Stella from behind, knocked her several feet, and so injured her that she died shortly thereafter. Jim Smith testified that when the car struck Stella, she and he were "walking off the pavement and on the right side of the road," the girl being nearest the pavement. A witness swore that the pavement was forty-five feet wide. There was testimony from which the jury could have concluded either that the catastrophe occurred between sundown and dark or that it took place after dark.

Wade Franklin, sworn for the State, testified: that a few minutes after he saw the defendant driving towards Washington "pretty fast" in a "Nash closed-in car," he heard a crying down the road and went to where Stella had been struck, and that, "judging from how fast the defendant was driving, he had time to get down there where the crying was before the crying took place." This witness also swore: "No other automobile passed from the time he passed me until I heard the crying. I was standing out there where I

could see, and looked, and I know no other car passed. Will Moss was driving a Nash car, a closed-in car. After I saw this girl down there by the road knocked down, I saw Will Moss again that day—he came back there. . . I know it was the same car and the same man that came down the road. I am positive that it was Will Moss. We always call him 'Big Top.' I am certain that it could not have been anybody else, because no other car came down the road before we got down there in a truck." A witness swore that he heard glass fall out of the car when it struck Stella. Another witness testified that when he went to the scene of the tragedy the next morning, he found lots of broken glass there, and that "it was of the same thickness and color as glass found in the car" defendant was driving. There was testimony that a part of the glass was broken out of the door on the right side of the automobile the defendant was driving after the killing, and also evidence from which the jury could have inferred that the glass in said door of the automobile was intact before the car passed the place where the girl was struck. Very shortly after the automobile struck the girl the defendant, in a car in which there were several other people, drove up to the scene of the tragedy and inquired if any one had got the number of the automobile that struck the girl. It further appears that the defendant carried some of the party to the hospital where Stella was taken.

The theory of the defendant's case, according to both his statement and his witnesses, is that shortly before the girl was injured the defendant, driving his automobile, met and passed the party of which Stella McLendon was a member; that shortly thereafter the defendant and his party met an automobile which was being driven rapidly and recklessly in the direction of the party of young people; that said automobile most likely struck the girl; and that defendant only found out that the girl was hurt when after turning around a short distance after passing the other auomobile, he drove back and found a crowd congregated about the injured girl.

If the jury had seen fit to believe the testimony adduced in behalf of the defendant, they would necessarily have reached the conclusion that the defendant was not at the place where the girl was injured at the time she was injured. It is true also that the State's witness, Wade Franklin, was somewhat confused on cross-examination. However, the jury being the judges of the credibility

112

of the witnesses and the weight of the evidence, this court can not hold that the verdict is not supported by the evidence. Therefore we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ Special grounds 1 and 2 complain that the court, in defining circumstantial evidence, in the same connection gave the jury the definition of direct evidence, as contained in the Penal Code (1910), § 1009. This is alleged to be error, for the reason that there was no direct evidence in the case, and because it was an expression of an opinion of the court that there was direct evidence in the case. The court charged the jury in practically the identical language of the following portion of section 1009: "Direct evidence is that which immediately points to the question at issue. Indirect, or circumstantial evidence, is that which only tends to establish the issue by proof of various facts, sustaining, by their consistency, the hypothesis claimed." It occurs to the writer of this opinion that the manner in which the charge contrasts direct evidence with circumstantial evidence brings out more clearly the meaning of circumstantial evidence; but, however this may be, neither of these grounds is meritorious. See *Wilburn* v. *State,* 141 *Ga.* 512 (6) (81 S. E. 444); *Bostick* v. *State,* 34 *Ga. App.* 595, 596 (130 S. E. 221).

■ In special ground 3 the movant complains of this charge: "Alibi, as a defense, should be established to the reasonable satisfaction of the jury, and not beyond a reasonable doubt." It is insisted that the charge is error "because it absolutely abrogates the right of the defendant to insist that the State establish his guilt beyond a reasonable doubt." The foregoing charge has the sanction of numerous decisions of both of the appellate courts of this State, and is not error. See *Ledford* v. *State,* 75 *Ga.* 856 (3); *Harrison* v. *State,* 83 *Ga.* 129 (3) (9 S. E. 542); *Henderson* v. *State,* 120 *Ga.* 504, 506 (3) (48 S. E. 167); *Montford* v. *State,* 144 *Ga.* 582 (5) (87 S. E. 797); *Johnson* v. *State,* 146 *Ga.* 190 (4) (91 S. E. 42); *Dedge* v. *State,* 153 *Ga.* 176 (111 S. E. 547); *Eugee* v. *State,* 159 *Ga.* 604 (13) (126 S. E. 471); *McRae* v. *State,* 163 *Ga.* 336, 344 (136 S. E. 268); *Ransom* v. *State,* 2 *Ga. App.* 826 (59 S. E. 101); *Pyles* v. *State,* 12 *Ga. App.* 667 (78 S. E. 144); *Cade* v. *State,* 41 *Ga. App.* 378 (2) (153 S. E. 76).

■ In special ground 4 the movant complains that the court's

charge upon the subject of alibi was "too restrictive," and that the judge erred in failing to further instruct the jury "that if in their opinion the testimony as to alibi alone was sufficient to raise in their minds a reasonable doubt as to the guilt of the accused, it would be their duty to give him the benefit of the doubt and acquit him." After charging the precise language of section 1018 of the Penal Code of 1910 in reference to alibi, the court immediately instructed the jury as follows: "If you believe that a crime was committed as charged in this bill of indictment, but you do not believe this defendant was present at the time and place of such offense, you should acquit upon that ground." The conclusion of the charge upon alibi is in this language: "You must believe the defendant guilty beyond a reasonable doubt." Furthermore, the court's charge upon the subject of alibi was substantially the same as the one approved in *Eugee* v. *State,* supra, and there was no request for any other or further charge. Clearly this ground is without merit.

■ The complaint in special ground 5 is that the court failed to give in charge section 64 of the Penal Code of 1910, and "that the court nowhere in its charge gave the jury the definition of involuntary manslaughter in the commission of a lawful act." After charging section 67 of the Penal Code of 1910, the first part of which reads, "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner," the court further charged section 69 of that Code, which is: "Involuntary manslaughter, in the commission or performance of a lawful act, where there has not been observed necessary discretion and caution, shall be punished as for a misdemeanor." The court charged: "If you believe beyond a reasonable doubt, from the evidence in this case, including the defendant's statement, that this defendant is guilty of the offense of involuntary manslaughter in the commission of a lawful act, but where there has not been observed necessary discretion and caution, it would be your duty to return a verdict against him for that offense." There was no request for any other charge than the one given, and this ground is not meritorious. See, in this connection, the case of *Chapman* v. *State,* 40 *Ga. App.* 725 (7) (151 S. E. 410), where this language was used: "The

court did not err in failing to give in charge to the jury section 64 of the Penal Code. The court in substance charged the law of involuntary manslaughter; and if a fuller charge on this subject was desired, a proper, legal request therefor in writing should have been made."

■ It is urged in special ground 6 that, under the evidence in the case, the court erred in failing to give in charge section 40 of the Penal Code of 1910, which reads as follows: "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears that there was no evil design, or intention, or culpable neglect." This principle of law was not pertinent to the facts of this case, and the court did not err in failing to charge it without request. In this connection see *Mincey* v. *State*, 150 *Ga.* 630 (104 S. E. 442).

In special ground 7 it is insisted that "the very nature of the alleged homicide required that the court give in charge section 31 of the Penal Code of 1910," which reads: "A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." In the absence of a request to give in charge this code section, the court did not err in failing to do so. See *Nelson* v. *State*, 27 *Ga. App.* 50 (5) (107 S. E. 400).

■ It appears from ground 8 that after a witness for the defendant had testified on cross-examination that the defendant "was not drinking," and counsel for movant had objected to the question of defendant's drinking being brought into the case, and had "asked the court to have the solicitor withdraw the question," the court said: "This defendant is charged with killing this girl while operating his automobile. I rule that the evidence is admissible as bearing on his condition, as to whether or not it was recklessly done." In view of the fact that the witness testified unequivocally that the defendant was not drinking, there is clearly no merit in the criticism that "the judge inferred, and indeed stated, the evidence elicited by the question." The next objection is this: "This language is . . an expression of opinion on the part of the court that the defendant committed the homicide, and that it was probably recklessly done." Unquestionably the judge expressed himself inaptly. However, in view of the following ruling in *Waddell* v. *State*, 29 *Ga. App.* 33 (5) (113 S. E. 94), the court's

language does not constitute reversible error: "The inhibition against an expression or intimation of opinion by the trial judge as to the facts of the case does not extend to colloquies between the judge and counsel as to the admissibility of certain evidence, especially where the judge is ruling upon a point made by counsel for the accused. Furthermore, if the judge, under such circumstances, should make a statement prejudicial to the accused, this court could not consider any complaint thereof, in the absence of a timely motion for a mistrial based thereon."

■ In special ground 9 it is contended that the court erred in allowing the witness Franklin to testify as follows: "After he passed by me I heard a fuss down the road; I heard a fuss, but I never heard any fuss until about the time he got down there." We would be warranted in holding that this ground is too incomplete for the consideration of this court. We prefer, however, to pass upon the question, and hold that the testimony was not subject to the only objection interposed, to wit, that it was "a conclusion of the witness."

■ The tenth and last special ground, complaining that the court erred in failing "to distinctly define to the jury what constitutes involuntary manslaughter in the commission of a lawful act without due caution and circumspection" is without merit, as has been sufficiently indicated in our discussion of special ground 5.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*