### 21689. MOSS *v.* THE STATE.

DECIDED NOVEMBER 10, 1931.

*Hugh E. Combs,* for plaintiff in error.
*M. L. Felts, solicitor-general,* contra.

LUKE, J. In August, 1930, Will Moss was convicted of involuntary manslaughter in the commission of an unlawful act. This conviction was affirmed by this court on April 1, 1931. See *Moss v. State,* 43 *Ga. App.* 109 (158 S. E. 461). On May 7, 1931, the accused filed an extraordinary motion for a new trial, based largely upon alleged newly discovered evidence. The question presented is whether the trial judge erred in overruling this motion. Since most of the grounds of the motion concern alleged newly discovered evidence, we shall briefly advert to some of the accepted principles of law pertaining to such evidence. "Newly discovered evidence is not favored as a ground for new trial." *Young v. State,* 56 *Ga.* 403 (4), citing *Berry v. State,* 10 *Ga.* 511 (13), 527; *Miller v. State,* 151 *Ga.* 710, 713 (108 S. E. 38); *Smith v. State,* 168 *Ga.* 611, 612 (148 S. E. 531); *Stubbs v. State,* 41 *Ga. App.* 836, 837 (155 S. E. 100). "And unless it is reasonably apparent

to the judicial mind that the new facts would probably produce a different verdict, a new trial should not be ordered." *Young* v. *State,* supra; *Brown* v. *State,* 141 *Ga.* 783, 786 (83 S. E. 238). "A motion for new trial upon the ground of newly discovered testimony is addressed to the sound discretion of the court, and his judgment overruling the motion as to that ground will not be disturbed unless manifestly abused." *Lakes* v. *Lakes,* 171 *Ga.* 692 (2) (156 S. E. 620). *Brown* v. *State,* supra. The foregoing rules apply with greater force where, as in the case at bar, a person has been regularly tried and convicted and his motion for a new trial denied by the appellate court. *Brown* v. *State,* supra. In such a case the newly discovered facts "must have been unknown to the defendant or his counsel, at the time of the first motion, and impossible to have been ascertained by the exercise of proper diligence for that purpose." *Malone* v. *Hopkins,* 49 *Ga.* 221; *Rogers* v. *State,* 129 *Ga.* 589 (59 S. E. 288). A bare recital in the affidavits of movant and counsel that the new facts could not have been known or discovered by the exercise of ordinary diligence until after the overruling of the first motion, without a disclosure of the facts upon which the recital is based, is a mere conclusion, and the trial judge is not bound as a matter of law to hold that the affiants exercised the required diligence. *Farmers Union Warehouse* v. *Boyd,* 31 *Ga. App.* 104 (5) (119 S. E. 542). See also *Taylor* v. *State,* 132 *Ga.* 235 (3), 237 (63 S. E. 1116) ; *Patterson* v. *Collier,* 77 *Ga.* 292 (3), 296 (3 S. E. 119). Where the sole effect of alleged newly discovered evidence is to impeach a witness, such evidence is not ground for a new trial. *Gaillard* v. *State,* 41 *Ga. App.* 478 (2) (153 S. E. 374) ; *Morgan* v. *State,* 38 *Ga. App.* 686 (5) (145 S. E. 521) ; *Bass* v. *State,* 154 *Ga.* 112 (2) (113 S. E. 524). "Newly discovered evidence which is cumulative, and tends to establish a fact in relation to which there was evidence on the trial, is not good cause for a new trial. *Roberts* v. *State,* 3 *Ga.* 310 (2) ; *Young* v. *State,* 131 *Ga.* 498 (62 S. E. 707) ; *Phillips* v. *State,* 163 *Ga.* 12 (135 S. E. 421)." *Smith* v. *State,* 168 *Ga.* 611(*b*), 612 (148 S. E. 531). "New evidence which is merely cumulative in character is not a ground for an extraordinary motion." *Coggeshall* v. *Park,* 162 *Ga.* 78 (5) (132 S. E. 632). "Alleged newly discovered evidence is no cause for a new trial, unless it shall appear that the evidence itself is newly discovered, not merely that

certain named witnesses by whom the facts can be proved were unknown until after the trial." *Bass* v. *State,* supra, citing *Burgess* v. *State,* 93 *Ga.* 304 (20 S. E. 331); *Jinks* v. *State,* 117 *Ga.* 714, 716 (44 S. E. 814).

Before passing upon the grounds of the extraordinary motion for a new trial, it may be well to state that as Stella McLendon and certain other young people were walking along the Lexington road towards Washington, Ga., at a time either between sundown and dark, or just after dark, on Sunday, June 1, 1930, a large closed automobile, also traveling in the direction of Washington, struck Stella from behind, and so injured her that she died shortly thereafter. Wade Franklin testified in substance that a few minutes after he saw the defendant driving rapidly towards Washington in a Nash closed-in car he "heard a crying down the road and went to the place where Stella had been struck;" that, "judging from how fast the defendant was driving, he had time to get down there where the crying was before the crying took place;" and that "no other automobile passed me until I heard the crying." The theory of the defendant's case was that shortly before the girl was struck he met and passed Stella and her party; that shortly thereafter the defendant met an automobile which was being driven rapidly and recklessly in Stella's direction; that said automobile most likely struck the girl; and that the defendant only ascertained that the girl was hurt when, after turning around a short distance after passing the other automobile, he drove back and found a crowd gathered about the injured girl.

It is not necessary to set out in detail the evidence in this case, and we have made no attempt to do so. The foregoing statement indicates the general complexion of the case, and is sufficient for the purposes of this decision.

1. The gist of the affidavit of William Thomas is: that on the morning after the homicide Wade Franklin told affiant that he was near the road and saw a car going in the direction of the place where Stella was struck, but that he did not know who was driving the car, or what the make of the car was; that affiant had another conversation with Franklin, during which the latter "tried to induce him to assist him in framing up a falsehood, . . laying the crime on Will Moss;" and that when the affiant refused to swear falsely, Franklin said "that he did not care, and that he was

going to do all he could to get a reward, . . and if he could get this money he did not care if they broke the son of a b—'s neck."

It is perfectly apparent that the sole purpose and effect of the testimony of William Thomas would be to impeach the witness Wade Franklin. Furthermore, there was a counter-affidavit to the effect that William Thomas was entirely unworthy of belief. Therefore this ground is without merit.

2. The gist of Loyd Jones' affidavit is that the car which killed Stella McLendon passed within a foot of affiant, and, notwithstanding the fact that affiant well knew Jim Binns and Mary Binns and the defendant, "he was unable to identify either of them as occupants of the car." Without setting out more of the contents of the affidavit of Loyd Jones, we will merely say that this witness's testimony was impeaching in its nature, and that there is no valid reason for believing that it would probably produce a different verdict.

3. The gist of Walter Fanning's affidavit is: that the rear doors of the accused's automobile had been broken out some time prior to the alleged homicide; that when movant returned to Atlanta on the day Stella was killed, his "said Nash car was in good condition, no glass being broken . . other than the glasses in the back-doors;" that affiant knew that shortly prior to the homicide he had "pawned" his car to a person "who had damaged it in a wreck in several particulars;" and that affiant knew that there was no fresh painting on the hood and fender of said automobile until after said wreck, which occurred on the Tuesday prior to the homicide of Stella McLendon. The testimony of Walter Fanning is impeaching and cumulative in its nature, and there is no ground for believing that it would produce a different verdict upon another trial. We hold that this, like the preceding ground, is without merit.

4. The substance of L. E. Mansfield's affidavit is that he knew Jim Binns, "one of the occupants of the car with Will Moss at the time said Moss is alleged to have driven a certain Nash automobile over Stella McLendon;" that said Binns had a splendid reputation —was "one of the very best men of his color;" and that affiant believed firmly that "had Will Moss driven a car over this girl, . . Jim Binns never would have concealed the crime, and would never have made any attempt to conceal the crime."

It takes no citation of authority to show that testimony like

the foregoing is altogether insufficient to furnish ground for a new trial.

5, 6. The affidavits of F. F. McMekin and M. A. Bentley are substantially the same as that of L. E. Mansfield. Neither of these grounds discloses any reason for reversing the judgment.

7. The next ground is that "the indictment charged the defendant with murder, and the jury returned a verdict of involuntary manslaughter in the commission of an unlawful act, and fixed his minimum at twelve months and his maximum punishment at eighteen months, and the court sentenced the defendant one year minimum and eighteen months maximum. . . Movant shows that the verdict was an illegal one, and that the sentence of the court is not in accordance with the verdict of the jury." This ground would be entirely too incomplete for consideration if it were in an ordinary motion for a new trial. How it could have been imagined that it was a proper ground in an extraordinary motion for a new trial, after the case had already been passed upon by this court, we are at a loss to understand.

8. In the next ground it is averred that H. F. Cofer's affidavit could not be gotten, but that Cofer would testify to the good character of Will Moss. Clearly this ground is not a valid one.

9. Walter Tiller deposed in substance that "at about first dark," on June 1, 1930, he "was on the Lexington road at a point near where this accident occurred, being between this point and Washington, and saw a car coming at . . about fifty miles per hour;" that the car "came by at the same rate of speed above mentioned," and nearly ran over affiant; that "the person driving said car put his head somewhat out of the door and cursed the deponent," telling him that he had just run over "one damned negro and would run over him;" that "there seemed to be four or five persons in the car, all of whom appeared to be . . young white men," but that affiant "is certain the person driving said car was a white man," and that, from the manner of his speech and actions, he "appeared to be under the influence of intoxicating liquors;" that "from all appearances the entire party was drinking;" that said automobile was a closed car, "and appeared to be a Chevrolet;" that affiant's wife was up the road in the direction from which said car had come, and that he "was afraid these people had run over her;". that affiant proceeded up the road, "in the direction of the

point where Stella McLendon was killed," to meet his wife, and that within a few minutes after meeting his wife, and after said car had passed, deponent heard that "a girl had just been run over by an automobile near Mr. Howard Prather's;" that affiant subsequently learned that this girl was Stella McLendon; that "from the time this car passed him. . . . he saw no other automobile pass coming from the direction of the point where Stella McLendon was killed, until after he had heard of the girl's being run over . . at that point;" and that affiant "was on the same road continuously during this period of time." By way of rebuttal the State introduced an affidavit of Walter Tiller, wherein he stated that he was busy at the filling-station when the former affidavit was read over to him, and that he "did not know exactly what he was signing when he signed it." This second affidavit differed from the original affidavit in certain particulars that are somewhat material. There were certain other affidavits the tenor of which was that Walter Tiller was nowhere near the scene of the homicide on the night in question. The trial judge may not have been impressed favorably with Tiller's first affidavit. At any rate, in view of his second affidavit, and of the other counter-affidavits, this court declines to hold that the judge abused his discretion in overruling this ground of the motion for a new trial.

Furthermore, in a case like the one at bar, "the newly discovered facts must have been unknown to the defendant or his counsel *at the time of the first motion*" (italics ours). See *Malone* v. *Hopkins, supra*. Again, where the averments in the affidavits of movant and counsel as to diligence are mere conclusions, the trial judge is not bound to hold that the affiants exercised the required diligence. See *Farmers Union Warehouse* v. *Boyd, supra*, and cit.

In the present case counsel avers that he did not know of the "testimony set out in the affidavits . . *at the time of the trial of the case*, and that he had no way of discovering same *before the trial of said case*, and that he was not negligent in discovering the same, and that this testimony could not have been discovered by the use of ordinary diligence." Movant's affidavit is practically the same as that of counsel. It will be observed that the foregoing affidavits of movant and counsel apply to every ground based upon newly discovered evidence. The trial judge may have decided that proper diligence was not exercised to obtain the alleged newly discovered evidence.

In conclusion, we hold that the trial judge did not err in overruling the extraordinary motion for a new trial for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*