## DANIEL *v.* THE STATE.

PER CURIAM. 1. The preliminary evidence was sufficient to admit proof of statements of the deceased as dying declarations. Furthermore, the statements were not prejudicial to the movant, since they did not in any way tend to prove his guilt, showing only that the deceased was killed by Marvin Honea, about which there was no issue, and the complicity of the movant being dependent solely on other evidence.

2. Marvin Honea, who had been previously tried and convicted and was under a sentence, was introduced as a witness for the State, and on

cross-examination was asked the following questions: (1) "Are you preparing to meet your God?" (2) "The only people that can save you now from the electric chair is the solicitor-general's office or the Governor of the State of Georgia. Isn't that true?" The court refused to allow the witness to answer these questions, and the movant assigned these rulings as error. It does not appear that any substantial right of the movant was violated, and these assignments do not show cause for a reversal. Code, § 38-1705; *City Bank of Macon* v. *Kent*, 57 *Ga.* 283 (16); *McCray* v. *State*, 134 *Ga.* 416 (4) (68 S. E. 62, 20 Ann. Cas. 101); *Eugee* v. *State*, 159 *Ga.* 604 (5) (126 S. E. 471).

3. The general grounds of the motion for a new trial are not insisted on. The court did not err in overruling the motion.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

No. 10971. JULY 11, 1936.

*Arthur W. Powell,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Boykin, solicitor-general, J. W. LeCraw, B. D. Murphy, G. L. Goode,* and *E. J. Clower,* contra.

RUSSELL, Chief Justice, dissenting. As it plainly appears from the motion for new trial that the court had not for itself decided, as a matter of the first instance, that the statements of the declarant were so complete in every essential principle required by law as to constitute a dying declaration, it was error to admit the testimony over the objection that the proof did not establish a dying declaration, and to hold that the testimony offered would be admitted up to that time "for the present," under proper instructions to the jury. If the proof to establish the alleged statements as dying declarations was incomplete, no proper instructions could lawfully have been given which would not have confused and misled the jury as to what was necessary to constitute a dying declaration, with the probability that a jury, with their great regard for the solemnity of dying declarations, would have been led to believe that the statements of the declarant represented the truth of the case. In ground 3 of the motion it is alleged that the court erred in failing to rule out the testimony of Dr. Hulsey relating to conversations of the deceased, at the conclusion of the cross-examination of the witness, upon the objection then and there made by counsel for the defendant, as follows: "By Mr. Powell: I renew my objection on the ground that it is not a dying declara-

tion. He had been told that he had a chance to live." The court overruled the objection, and said to the jury: "Gentlemen, certain principles of law are applicable to this testimony. The court will leave it to you, in the final instructions, whether or not this was a dying declaration under principles of law to be given." It is my opinion that the court erred in overruling this ground. While the objection based on the ground that the testimony of Dr. John M. Hulsey Jr. was not a dying declaration could have been more fully stated, enough was stated to show that the plaintiff in error was insisting that the testimony of Dr. Hulsey did not evidence a dying declaration, or at least that it might not be sufficient for this purpose, because the decedent had been told that he had a chance to live. But the court certainly erred in stating, as a principle of law, that he would leave it to the jury whether the testimony was a dying declaration. The point is analogous to the ruling as to whether a confession is freely and voluntarily made, so as to be properly admissible; and as to this it has been uniformly held by this court that the trial judge must not admit alleged proof of an alleged confession until he has established in his own mind, without regard to the jury, that there is evidence at least establishing prima facie that the alleged confession was made without the slightest fear of injury or slightest hope of favor. So, for the same reason, to admit statements from an injured person, who afterwards dies, the rule has always been inflexible that dying declarations at best are hearsay evidence, admitted from the necessity of the case to establish the identity of the assailant, and only then when the declarant is in articulo mortis—in extremis; when the declarant is conscious of the rapid approach of death, and the solemnity of the occasion is sufficient to be taken as a substitute for an oath which otherwise the witness would be required to take. In the case at bar the necessity for the introduction of the dying declarations does not appear, when it appears from the record that more than one witness saw the shot fired and the deceased fall, and that the killing was utterly without provocation.

In *Mitchell* v. *State*, 71 *Ga.* 128 (2) it was held: "Dying declarations constitute one of the exceptions to the rule which rejects hearsay evidence. Their admission is founded on the necessity of the case and the reason that, being made in view of impending death and judgment, when the hope of life is extinct and the

retributions of eternity are at hand, they stand upon the same plane of solemnity as statements made under oath. They are admissible only when made by a person in the article of death who is conscious of his condition, and then only in cases of prosecutions for homicide, and for the sole purpose of showing the cause of death and the person who committed the act; and great caution is necessary, not only in the admission, but in the use of this kind of testimony. . . The case at bar falls short of the requirements necessary to make dying declarations available. . . The court must judge of the preliminary evidence in the first instance. If he deems it prima facie sufficient, he should admit the declarations, instructing the jury afterwards to pass finally for themselves on the question, whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death." In the case at bar I am of the opinion that the learned trial judge erred in admitting the testimony of Dr. Hulsey without evidence that the declarant, at the time he made the statement, was himself conscious that he was in the article of death and that all hope of recovery had fled. In delivering the opinion of the court in the *Mitchell* case, supra, Mr. Justice Hall said: "The first of these exceptions demanding our examination and careful consideration are those which relate to dying declarations. In *Campbell's* case, 11 *Ga.* 374, 375, it is said that this species of testimony constitutes one of the exceptions to the rule which rejects hearsay evidence; it is founded on the necessity of the case, and for the reason that the sanction under which these declarations are made, in view of impending death and judgment, when the last hope of life is extinct, and when the retributions of eternity are at hand, is of equal solemnity as that of statements made under oath. 'Still,' it is added, 'it must be admitted that great caution should be observed in the use of this kind of evidence.' By the Code, § 3781 [Code of 1933, § 38-307], dying declarations are admissible only when made by a person in the article of death, and who is conscious of his condition, and then only in the case of prosecutions for homicide, and for the sole purpose of showing the cause of death and the person who committed the act. The necessity for this great caution, not only in the admission, but in the use, of this kind of testimony, is enforced by judges and writers who have dealt with the subject."

Justice Hall then cited numerous authorities, a large number of English cases, as well as the decision of the Supreme Court of Vermont in State *v.* Center, 35 Vt. 378, the language of which was approved, and declared: "It is not true, as supposed by counsel who argued this case for the State, that this court has left the question of its competency in doubtful cases in some measure to the jury, and to this they cite *Campbell's* case, 11 *Ga.* 353, 354, 376, 377; *Jackson's* case, 56 *Ga.* 236, 237. Neither of these cases relieves the presiding judge, in any measure, from the responsibility of passing upon the admissibility and competency of the evidence; in submitting to the jury the circumstances under which the declarations were made, whether in articulo mortis or not, and it was only designed to provide additional safeguards allowing them to pass upon the credibility of the testimony, and affording them all the considerations necessary for determining its proper weight and effect. This is clear from the cases themselves; but if it were not, it has been rendered plain by the ruling of the court in *Dumas'* case, 62 *Ga.* 58, 59, where it is stated in explicit terms that 'the court must judge of the preliminary evidence, in the first instance, and, deeming it prima facie sufficient, should admit the declarations, instructing the jury afterwards to pass finally for themselves on the question whether or not the declarations were conscious utterances, in the apprehension and immediate prospect of death.' . . The preliminary investigation touching their admissibility and the argument of counsel upon the subject took place in the presence of the jury, and the court in deciding to admit them said he would 'instruct the jury as to their weight in his charge.' . . The only circumstances bearing upon the weight of such evidence to which the charge calls attention are the facts of the consciousness of the deceased as to his condition when the statement was made, and his knowledge of the person who inflicted the injury. The jury are plainly told, if they believed that he knew who killed him, that if he was conscious of the fact that he was wounded, and that he would die from that wound, then they should consider the statement as though it had been given on the trial under oath. That is, as we understand it, if these conditions appeared, they were to treat the statement just as they would that of a witness who had been regularly sworn and had testified on the trial; that it was in all respects entitled to

the same weight as the testimony of such a witness. No allusion is made to any of the other numerous circumstances which we have seen are essential in determining the weight and effect of such evidence, and in this respect the charge falls far short of the requirements of the law, and was manifestly erroneous. From its general character and from its want of particularity in this material and essential respect, it was calculated to mislead, rather than to aid the jury in reaching a correct conclusion."

In ground 4 it is alleged that the court erred in admitting the testimony of Mrs. David Lord, widow of the deceased, as follows: "After he [deceased] came from the operating room, my brother and I were there with him. We asked him about it, and he said he did not have time to raise his hands before he was shot down, and he thought he knew the boy that shot him, 'but he did not know his name." Counsel for the defendant said: "We object on the same grounds as we objected to the testimony of the doctor, and on the ground it was not a dying declaration." The court overruled the objection, and said to the jury: "Gentlemen, the court does not rule this is a dying declaration, but leaves it to the jury under proper instructions to be given later. The testimony is given you under instructions. The court holds that the testimony is admissible for the present, to go to you with proper instructions to you, and it is for you to find whether or not it is a dying declaration." From this assignment of error it clearly appears that there was no preliminary investigation by the judge, and he had not determined whether a prima facie case had been made; and yet, without having determined that a prima facie case of admissibility as a dying declaration had been made before the jury, he left the determination of the primal question of admissibility entirely to the jury.

Ground 5 alleges that the court erred in refusing to allow counsel for the defendant to ask Marvin Honea, the confessed slayer of the deceased and a witness for the State, on cross-examination, "Are you preparing to meet your God?" The court said: "I will not permit you to ask a question that is improper." It is alleged that this refusal was tantamount to a denial of the defendant's right to a thorough and sifting cross-examination of the witness, thereby preventing the defendant from determining the mental condition and attitude of the witness.

Ground 6 alleges that the court erred in refusing to allow counsel for the defendant, on cross-examination, to ask the witness Marvin Honea the following question: "The only people that can save you now from the electric chair is the solicitor-general's office or the Governor of the State of Georgia. Isn't that true?" The court refused to permit the witness to answer, saying: "That is not proper. You can ask him anything with reference to any arrangements or discussion he has had with any of these people. That would be a matter of law you are asking about." "It is contended that the exclusion of this question, by the court, prevented a thorough and sifting cross-examination of the witness, who had testified that he had killed deceased and had been convicted, to show his mental attitude and state of mind. The question went to the credit of the witness, would show motive, possibly, for his testifying against defendant. The defendant had right to show, not only whether he had any agreement or discussion with any of the officers, but that, whether he had had or not, the general demeanor or attitude of any of the officers may or may not have led him to believe some benefit might come to him if he testified against the defendant. The exclusion of this question was especially harmful to defendant." As I understand the law with reference to cross-examination, the words of the statute to the effect that a litigant is entitled to subject witnesses who have testified against him to a thorough and sifting cross-examination are to be taken literally, and not in a refined or qualified sense. In my opinion the question to the witness Marvin Honea, the confessed slayer, then under sentence of death, "Are you preparing to meet your God?" was a proper question. It may be it was intended to lead up to a further question as to whether the witness believed in God, or whether he had any God in whom he placed belief. In the circumstances it might tend to discredit the testimony of the witness, because from this it could be inferred that he had no respect for the sanction of an oath, or obedience to God to bear witness to the truth of his statements. The court also erred in refusing to permit the same witness to testify whether "the only people that can save you now from the electric chair is the solicitor-general's office or the Governor of the State of Georgia? Isn't that true?" The error was not modified or removed by the restriction imposed by the court in ruling: "You can ask him anything with reference to any

arrangements or discussion he has had with any of these people. That would be a matter of law that you are asking about." That ruling is not at all applicable to the question which the court refused to allow counsel to ask. It is not necessarily a question of law. The witness may have known for himself, or been advised by hearsay, of the fact that in his situation the only people who could save him, as a convict under death sentence, would have to be the solicitor-general's office or the Governor of the State of Georgia. While it is the law, it is also a matter of common knowledge, that the Governor can pardon one under sentence of death, and that he can also commute a death sentence to life imprisonment. There are very few people so ignorant they do not know this, no matter how they obtained the information; and the fact that it happened also to be a matter of law does not prevent it from being a matter of at least generally prevailing opinion with the most ignorant person. The same may be said as to the question with relation to the solicitor-general's office. The question asked by counsel for the accused may well be construed as tantamount to asking whether the witness was not of the opinion that the solicitor-general, in consideration of his testimony, might recommend to the chief executive a commutation. There are other reasons, in my opinion, which make the questions which the court refused to permit perfectly legitimate exercises of the right of a thorough and sifting cross-examination accorded in all instances under the circumstances set forth above. The right of the accused to a thorough and sifting cross-examination of an adverse witness was practically eliminated. "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code of 1933, § 38-1705. The rule is of such nature that it should be liberally construed to effectuate the purpose for which the statute was originally enacted, and it should never be so restricted as to hamper rather than aid the eliciting of the truth from adverse or unwilling witnesses. It is true that both questions propounded by counsel to the witness were leading, but this has never been held, so far as I am aware, to be a valid objection where the witness is under cross-examination.