### 43883. HAMILTON et al. v. THE STATE.

WHITMAN, Judge. 1. E. J. Hamilton and his brother, Charles Hamilton, were convicted and sentenced to the penitentiary for the offense of accessory before the fact of burglary.

This appeal is from an order of the trial court overruling defendants' extraordinary motion for new trial. The same is enumerated as error.

2. "A new trial may be granted in all cases when any material evidence, not merely cumulative or impeaching in its character, but relating to new and materials facts, shall be discovered by the applicant after the rendition of a verdict against him. . ." *Code* § 70-204. But "Extraordinary motions for new trial based on newly discovered evidence are not favored by the law. . . [They are] addressed to the sound discretion of the trial judge, and a refusal to grant

the motion will not be reversed unless his discretion is abused. If it is not reasonably apparent to the judicial mind that the new facts would probably produce a different verdict, a new trial should not be ordered. *Parks v. State,* 204 Ga. 41 (48 SE2d 837); *Pulliam v. State,* 199 Ga. 709 (35 SE2d 250)." *Patterson v. State,* 208 Ga. 689 (1) (69 SE2d 84). See also *Fulford v. State,* 222 Ga. 846 (152 SE2d 845).

An extraordinary motion for new trial can not be based upon evidence which was known to the movant or which could have been discovered in time by proper diligence. *Malone v. Hopkins,* 49 Ga. 221; *Bishop v. State,* 117 Ga. App. 93 (159 SE2d 477). Newly discovered evidence which is merely impeaching and cumulative in character is not ground for a new trial. *Puryear v. State,* 66 Ga. 753; *Moss v. State,* 44 Ga. App. 244 (161 SE 293).

3. The motion in the present case is predicated upon the evidence contained in four affidavits attached to the motion.

The affidavit of Eddie B. Sharp, who committed the burglary and plead guilty thereto, states that the Hamilton brothers had nothing to do with the burglary and knew nothing about it; that he had hidden a stolen sewing machine and radio in a field near his house; and that he went to Charles Hamilton's house and borrowed his car; that Charles Hamilton went with him over to E. J. Hamilton's house and he (E. J. Hamilton) went with him to see if he could pawn the sewing machine. He futher states: "I didn't have the sewing machine so I drove the car back out to the Jones Settlement to the field. I had hid the sewing machine and radio and picked them up. I had told Charles and E. J. Hamilton that I was going to pick up my wife and bring her to Valdosta and they thought that was where I was going when I drove out there. [Charles and E. J. Hamilton went with him.] I picked the things up and went back to see Mr. J. B. McLeod and pawned the machine. Then we went to the package store where we were arrested. . . I fooled Charles Hamilton and E. J. Hamilton all along. I told them that the sewing machine was the property of my wife and I was going to pawn it but I would get it back and they believed me. They had nothing to do with the burglary and they didn't know about it or that I had entered that house."

Sharp had testified at the trial of the case as a witness for

the defendants. There he testified to the same effect, i.e., that he "had got the stuff prior to them being with me"; that "They couldn't have known it"; that they had nothing to do with it, "it was my own doing there"; and that they had nothing to do with putting the stolen goods in the car and had nothing to do with disposing of the property. The affidavit of Sharp is merely cumulative of his testimony at the trial.

The affidavit of Irene Sharp identifies her as the wife of Eddie B. Sharp. She states that on the morning of the theft her husband got up around six o'clock telling her he was going to work, but he returned home about 10 or 10:30 a.m. with a gun which he said he had taken from Benjamin Hart's house; that he had said he had taken some other things and was going to sell them and get some money; and that E. J. and Charles Hamilton did not know Eddie Sharp was going to break into Hart's house because he didn't go to their house until after he had broken into that house. The record shows that Irene Sharp is the sister of Charles and E. J. Hamilton.

The affidavit of Mattie Lou Larry states that she is a cousin of Eddie B. Sharp and was living with Sharp and his wife at the time; that she also saw Sharp come back that morning around 10:30 with a rifle in his hand; that she saw him shoot it off the side of the porch two times; and saw him leave the house later around 12 or 12:30.

The affidavit of Willie May Hamilton states that she is the wife of Charles Hamilton; that on the day in question he left home between 7:15 and 7:30 a.m. saying he was going to the store where he works part time and is paid in meat; that he came back home about 11:30 a.m. with fish, pork chops, chicken and sausage; that he had been drinking, he ate his dinner and lay down on the sofa; that Eddie Sharp came to the house between 12:30 and 1 p.m. and asked Charles Hamilton for the loan of their car; and that they left together between 3:30 and 4 p.m.

The affidavits of Irene Sharp, Mattie Lou Larry and Willie May Hamilton tend to establish that Eddie Sharp committed the burglary alone early in the morning and had no contact with the Hamiltons until later in the day. Assuming that this evidence could not have been discovered with the exercise of diligence before the trial, it is still merely cumulative to the

evidence presented at the trial. Sharp testified that he got the rifle early in the morning and took it home; that he got the Hamilton car around 12 or 1 o'clock; and that the Hamiltons had nothing at all to do with the burglary. Charles Hamilton by unsworn statement at the trial stated that Sharp came to his house about 1 o'clock and wanted to borrow the car and about two or three hours later he came back and they left together. He stated that Sharp told him the sewing machine belonged to his wife and that was all he knew about it. E. J. Hamilton in his unsworn statement testified that he got off work about 12 o'clock and Sharp came by his house about 5 o'clock; that Sharp asked him about where he could get rid of some secondhand furniture and he told him about a man named McLeod; but he did not know Sharp had stolen anything.

4. We are not here presented with any question of whether the verdict was contrary to the evidence or contrary to the law. A motion for new trial on general or special grounds does not appear to have been made in this case. The narrow question before us is whether the trial court erred in denying the extraordinary motion for new trial on the ground of newly discovered evidence. In view of the legal principles set forth in Division 2 and the nature of the newly discovered evidence relied upon in support of the motion (see Division 3) the trial court did not err in denying the motion.

*Judgment affirmed. Felton, C. J., and Eberhardt, J., concur.*

Submitted September 3, 1968—Decided January 24, 1969— Rehearing denied February 13, 1969—

*Burch & Boswell, John S. Boswell, Sr.,* for appellants.
*Marcus B. Calhoun, Solicitor General,* for appellee.

